KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtors and Debtors-In-Possession
Hashfast Technologies LLC and HashFast LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**(SAN FRANCISCO DIVISION)**

| | |
|---|---|
| In re:<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company,<br><br>    Debtor and Debtor-In-Possession<br><br>―――――――――――――――――<br><br>☒ Affects HASHFAST LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor-In-Possession | Case No. 14-30725<br><br>(Substantively Consolidated with In re HashFast LLC, Case No. 14-30866)<br><br>Chapter 11 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, and HASHFAST LLC, a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MARC A. LOWE, an individual, *aka* Cypherdoc and/or Ciperdoc, | Adversary Case No. _____<br><br>**COMPLAINT FOR:**<br><br>1. **AVOIDANCE OF PREFERENTIAL TRANSFERS;**<br>2. **AVOIDANCE OF FRAUDULENT TRANSFERS;**<br>3. **AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD); AND**<br>4. **RECOVERY OF AVOIDED** |

| | |
|---|---|
| Defendant. | **TRANSFERS** |
| | [11 U.S.C. §§ 544, 547; 548, and 550 and Cal. Civil Code §§ 3439.04, 3439.05, and 3439.07] |
| | <u>Status Conference</u>: |
| | Date: TBD |
| | Time: TBD |
| | Place: Courtroom 22 |
| | U.S. Bankruptcy Court |
| | 235 Pine Street |
| | San Francisco, CA 94104 |

## COMPLAINT

HashFast Technologies LLC, a California limited liability company ("<u>HashFast Technologies</u>"), and HashFast LLC, a Delaware limited liability company ("<u>HashFast</u>", collectively with HashFast Technologies, the "<u>Debtors</u>" and each a "<u>Debtor</u>"), by and through its undersigned counsel, bring this complaint (the "<u>Complaint</u>") against Defendant Marc A. Lowe, an individual, a/k/a Cypherdoc and/or Cipherdoc (the "<u>Defendant</u>"), and in support of this Complaint state as follows:

## JURISDICTION

1. This adversary proceeding arises out of and is related to the above-captioned, substantively consolidated bankruptcy cases (collectively, the "<u>Bankruptcy Cases</u>") of *In re HashFast Technologies, LLC*, case no. 14-30725 DM (the "<u>HFT Bankruptcy Case</u>"), and *In re HashFast, LLC*, case no. 14-30866 DM (the "<u>HF Bankruptcy Case</u>"), pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "<u>Court</u>"), and/or the claims alleged herein arise under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2. The causes of action set forth herein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and/or (O), and/or relate to the Bankruptcy Cases. To the extent the Court determines that any claim and/or cause of action alleged herein does not constitute a core proceeding, the Debtors hereby consent to this Court's adjudication of the claims and/or causes of action and to the entry of final orders and judgments in this adversary proceeding.

2

3. Venue is appropriate pursuant to 28 U.S.C. §§ 1391, 1408, and 1409 as this is the district in which the Bankruptcy Cases are pending and in which the relevant conduct complained of herein took place.

4. On May 9, 2014 (the "Petition Date"), certain petitioning creditors filed a chapter 7 Involuntary Petition in the Court against Hashfast Technologies under title 11 of the Bankruptcy Code [Lead Case Doc. No. 1].

5. On June 3, 2014, HashFast Technologies filed its Conditional Consent to an Order for Relief [Doc. No. 36] and its Motion to Convert to Chapter 11 [Lead Case Doc. No. 35].

6. The Bankruptcy Court entered its order converting HashFast Technologies' case to one under chapter 11 of the Bankruptcy Code on June 5, 2014 [Lead Case Doc. No. 40].

7. On June 6, 2014, HashFast filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**BACKGROUND**

8. The Debtors design, develop, manufacture and sell certain computer chips and equipment, including Application Specific Integrated Circuit, or ASIC, semiconductors, for the sole purpose of auditing transaction data for the Bitcoin networks, also known as "Bitcoin mining." On or about June 2013, the Debtors began designing their first generation Golden Nonce (the "GN1"), with the assistance of Sandgate Technologies ("Sandgate") and Uniquify, Inc. ("Uniquify"). Following the development of the GN1, the Debtors worked with DXCorr Design (the "DXC") to design and develop subsequent generations of the GN1.

9. On or about July 2013, HFT began advertising a special purpose computer system built around the GN1 (the "BabyJet") for sale and started accepting orders for the "batch one" BabyJets in early August 2013. The BabyJet and GN1 chip sold well from the time they were launched—specifically, between July and December 2013, the Debtors sold approximately $18,000,000 in computers, chips, and accessories.

10. On or about July 29, 2013, Defendant Marc A. Lowe ("Defendant") visited the Debtors' headquarters to ostensibly tour the facility and meet the members and employees of HFT prior to purchasing one or more of the Debtors' products. During the tour, the Defendant met with

3

Eduardo de Castro, the Chief Executive Officer of HFT and co-owner of HF. As a result of the visit, the Defendant purchased four terra-hash per second of hashing power through the acquisition of eight GN1 chips or three to four fully assembled BabyJets (the "Computers") for the sum of $36,000, inclusive of sales tax—a $7,150 discount off of the list price (the "Sale"). The Defendant paid the discounted purchase price for the Computers by personal check dated July 29, 2013.

11. Subsequent to the visit, a memorandum of understanding dated August 5, 2013 (the "MOU") was executed by the Defendant and HFT. By and through the MOU, the Defendant agreed to endorse the Debtors and their products by posting comments and responding to certain inquiries on various Bitcoin-related forums and/or message boards, including Bitcointalk.org. In exchange for such "services", the Defendant was to receive ten percent (10%) of the base sale price (i.e., gross sale proceeds) for the first 550 "batch one" BabyJets sold by the Debtors, payable in BTC (the "MOU Compensation"). According to the MOU, the Defendant was entitled to the MOU Compensation regardless of whether the "endorsement" contributed in any way to the sale of any BabyJet or other HFT product. A true and correct copy of the MOU is attached hereto as Exhibit A and is incorporated herein by reference. At the time the MOU was executed, HFT was offering the BabyJets for sale at a base price of approximately $5,600 or 56 BTC.

12. The Debtors are informed and believe and based thereon allege that the Defendant is a medical doctor without any experience marketing or advertising BTC mining hardware or hardware manufacturers.

13. In addition to the business relationship established by the MOU, the Defendant also purports to have joined HFT's board of advisors in late-July or early-August 2013. As the Defendant stated in a post dated August 8, 2013: "I have also been asked to join [HFT's] Board of Advisors." A true and correct copy of the August 8, 2013 post is attached hereto at pages 1-3 of Exhibit B and incorporated herein by reference. The Debtors allege that the Defendant had direct and regular contact with the Debtors' members, principals, directors, and employees—individuals generally unavailable to ordinary customers and creditors.

14. On or about August 8, 2013, the Defendant began posting commentary regarding HFT and the Debtors' products on Bitcointalk.org under a thread titled "HashFast Endorsement."

Between August 8, 2013, and September 9, 2013, the Defendant posted approximately 160 comments and updates (an average of 5 posts per day) regarding, among other things, the roll-out and sale of the BabyJet. The Defendant's posts, however, were not limited to salient matters; rather, the Defendant also engaged "trolls" in irrelevant and lengthy debate regarding numerous topics, including, but not limited to, economics and the philosophy underlying BTC. The irrelevant commentary accounts for a substantial portion of the approximately 160 posts, a sample of which is attached hereto at pages 3-227 of Exhibit B and incorporated herein by reference.

15. In or about early September 2013, HFT pre-sold the first 550 BabyJets. Thereafter, on or about September 4, 2013, the Defendant requested payment in accordance with the MOU. A true and correct copy of the request is attached hereto as Exhibit C and incorporated herein by reference. The Defendant calculated that he was owed a total of $308,000 in BTC at the exchange rate applicable on August 8, 2013, and requested payment of 3242.1 BTC within seven (7) days.

16. The Debtors were unable to pay immediately the requested amount due to the limited availability of funds and BTC. Indeed, the Debtors did not make the first distribution of BTC to the Defendant on account of the MOU until September 5, 2013.

17. In total, the Debtors transferred 3000 BTC to the Defendant (the "MOU Payment") from two different BTC wallets belonging to HFT. The Debtors transferred the MOU Payment to the Defendant via four deposits into a BTC wallet specified by and belonging to the Defendant[1] bearing account number xUDJ9 (the "Wallet")—specifically: (a) 2000 BTC on September 5, 2013; (b) 250 BTC on September 14, 2013; (c) 250 BTC on September 22, 2013; and (d) 500 BTC on September 23, 2013 (collectively, the "Transfers"). A true and correct copy of the transaction record is attached hereto as Exhibit D and incorporated herein by reference. With the exception of one BTC, the Transfers are currently in the Wallet and, to the best of the Debtors' knowledge, have never been moved out of the Wallet.

18. At the times of the Transfers, the BTC transferred to the Defendant were worth

---

[1] A true and correct copy of correspondence from the Defendant identifying the Wallet is attached hereto as Exhibit E and incorporated herein by reference.

5

$363,861.43.[2] Based on the value of the BTC at the time of the transfers, the Defendant received approximately $11,370 per day or $2,274 per post on the "HashFast Endorsement" thread on Bitcointalk.org. By contrast, the highest salary paid to any principal or employee of HFT and/or HF was $144,000 for the entire calendar year of 2013.

19. At or about the time the Defendant was "endorsing" the Debtors and their products, the Debtors attempted to recruit other persons to provide the same or similar services. A true and correct copy of such correspondence is attached hereto as Exhibit F and incorporated herein by reference. However, in stark contrast to the MOU Payment, the other parties were offered $150 or a little more than 1 BTC per week (approximately 0.0014% of the compensation paid to the Defendant) to post two to four comments per day on certain online discussion boards or forums—roughly $21.43 per day or $10.71 per post (based on two comments per day).

20. At the time of the Transfers, the Debtors owed substantial sums of money and/or equipment to numerous customers and/or vendors. Many of these obligations remain unpaid and constitute general unsecured claims against the Estate. As of September 30, 2013, the Debtors' balance sheet had a negative equity balance of about $5 million.

21. Additionally, at or about the time of the Transfers, the Debtors were incurring significant liabilities in the course of their operations that ultimately exceeded the Debtors' ability to repay. More precisely, despite an inability to deliver the BabyJet or GN1, the Debtors continued to accept orders for these products and promised guaranteed delivery dates that the Debtors failed to meet. In an effort to meet these timelines, the Debtors ordered products on expedited delivery schedules, which substantially increased the production costs of the GN1 and BabyJet. Due to the increased costs and other associated overhead, the Debtors were unable to realize a profit from their operations or meet their financial and/or delivery obligations.

---

[2] On September 5, 2013, one BTC was worth $120.5333 (US). On September 14, 2013, one BTC was worth $124.0813 (US). On September 22, 2013, one BTC was worth $122.651 (US). On September 23, 2013, one BTC was worth $122.2235 (US). See Historical Bitcoin Price Index, available at http://www.coindesk.com/price/ (last visited Dec. 22, 2014). As of January 14, 2015, the Transfers are worth approximately $555,000, which is based on a value of $185.00 (US) per BTC. See Historical Bitcoin Price Index, available at http://www.coindesk.com/price/ (last visited Jan. 14, 2015). As of the commencement of the HF Bankruptcy on May 9, 2014, the Transfers were worth approximately $1,344,705. Id. At the 1-year height in the BTC market in early-December 2013, the Transfers had a value in excess of $3,400,000. Id.

6

22. Ultimately, the Debtors were unable to fulfill many of the orders on or before the guaranteed delivery date (December 31, 2013), including, but not limited to, many of the "batch one" orders upon which the MOU Payment was premised. As a result, many customers began demanding refunds for their purchases in or about January 2014. As the Debtors lacked sufficient funds and/or BTC to pay all the refunds requested and remained unable to fill customer orders, multiple customers commenced lawsuits against the Debtors in an effort to obtain a refund in currency and/or BTC.

23. Like many other customers, the Defendant requested a refund of the $36,000 he paid in association with the Sale in or about January 2014. The Defendant received a full refund of the $36,000 purchase price plus a five percent (5%) bonus, for a total of $37,800, on January 10, 2014 (the "Refund"). The Refund was paid from HFT's account at Silicon Valley Bank via a wire transfer to the Defendant.

24. The Debtors are informed and believe and based thereon alleges that the Defendant currently holds the specific BTC paid by HFT in the Wallet.

**FIRST CLAIM FOR RELIEF**

**AVOIDANCE OF PREFERENTIAL TRANSFERS**

**[11 U.S.C. § 547(b)]**

25. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 24 as if fully set forth herein.

26. At the time of the Refund, the Defendant was a creditor of one or both of the Debtors by virtue of the Sale.

27. The currency used to pay the Refund constituted property belonging to one or both of the Debtors at the time of its payment.

28. The Refund was paid on account of an antecedent debt owing to the Defendant as a result of Debtors' inability to fulfill the Sale. More precisely, upon the Debtors' failure to deliver the Computers on or before December 31, 2013, the Defendant became a creditor of the Debtors.

29. By virtue of his involvement with one or both of the Debtors, including their members, principals, directors and employees, the Defendant constituted an insider within the

7

meaning of 11 U.S.C. §§ 101(31) at the time of the Refund as the Defendant possessed authority and/or influence over the Debtors and their principals, and was previously engaged in a joint venture with the Debtors pursuant to the MOU for the sale of 550 BabyJets.

30. The Refund was paid on or about January 10, 2014, within one year of the HFT Petition Date and HF Petition Date (the "Preference Period").

31. As a result of the Refund, the Defendant received payment in full on account of an antecedent debt that would have constituted a general unsecured claim against the Estate if not paid prepetition.

32. If the Refund had not been paid within the Preference Period, the Defendant would not have received the full Refund in the context of a chapter 7 liquidation as the Debtors were and still are insolvent and unable to pay all general unsecured creditors in full, including, but not limited to, the claims relating to refund requests of creditors otherwise similarly-situated to the Defendant.

33. By reason of the foregoing, the Refund is avoidable pursuant to 11 U.S.C. § 547.

## SECOND CLAIM FOR RELIEF

## AVOIDANCE OF FRAUDULENT TRANSFERS

### [11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(2)]

34. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 33 as if fully set forth herein.

35. The Transfers occurred within the four-year period immediately preceding the HFT Petition Date and HF Petition Date.

36. The Defendant received the Transfers, and he continues to hold the BTC transferred in the Wallet.

37. The BTC that comprised the Transfers constituted property belonging to one or both of the Debtors at the time of the Transfers.

38. The Debtors received less than reasonably equivalent value in exchange for the Transfers. More precisely, the value of the "services" provided by the Defendants and received by the Debtors (i.e., posting 160 comments on Bitcoin-related forums over a period of approximately

8

one month) was less valuable than the consideration provided in exchange for such "services"—namely, BTC worth more than $350,000 at the time of the Transfers.

39. Several customers and/or vendors held claims against the Debtors at the time of the Transfers, including, but not limited to, Pete Morici.

40. At the time of the Transfers, the Debtors were engaged in the designing, manufacture and sale of the GN1 and BabyJet. The Debtors, however, lacked sufficient capital to maintain operations and, as a result, resorted to utilizing customer, pre-purchase funds and selling BTC in an effort to maintain operations. Following the payment of the MOU Payment, the Debtors possessed (and still possess) unreasonably small assets in relation to the business and the scale of the transactions required to maintain productivity—a deficiency that ultimately led to the failure of the business and bankruptcy.

41. Additionally, at the time of the Transfers, the Debtors were incurring substantial liabilities in the operation of their business that exceeded their ability to repay. More precisely, the Debtors were unable to fulfill existing orders for the BabyJets and/or GN1 chip, or remain current with the vendors that manufactured the component parts and/or assembled the Debtors' products at the time of the Transfers. As a result, the Debtors were incurring substantial liabilities, and they lacked the financial capability to repay.

42. At present, the claims against the Estate total approximately $40,754,674. The total assets presently held are insufficient to pay all the claims against the Estate. Recovery of the Transfers is necessary to satisfy the claims of creditors asserted against the Estate.

43. By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 544 and Cal. Civil Code § 3439.04.

### THIRD CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)

### [11 U.S.C. § 544 and Cal. Civil Code § 3439.05]

44. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

45. The Transfers occurred within the four-year period immediately preceding the HFT

9

Petition Date and HF Petition Date.

46. The Defendant received the Transfers, and he continues to hold the BTC transferred in the Wallet.

47. The BTC that comprised the Transfers constituted property belonging to one or both of the Debtors at the time of the Transfers.

48. The Debtors received less than reasonably equivalent value in exchange for the Transfers.

49. Several customers and/or vendors held claims against the Debtors at the time of the Transfers, including, but not limited to, Pete Morici.

50. At present, the claims against the Estate total approximately $40,754,674. The total assets presently held are insufficient to pay all the claims against the Estate. Recovery of the Transfers is necessary to satisfy the claims of creditors asserted against the Estate.

51. The Debtors were insolvent at the time of or became insolvent as a result of the Transfers to the Defendant—namely, at the time of or as a result of the Transfers, the Debtors were unable to meet all their obligations as they became due and/or were insolvent on a balance sheet basis due to the fact that their liabilities were greater than their assets.

52. By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 544 and Cal. Civil Code § 3439.05.

### FOURTH CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFERS (CONSTRUCTIVE FRAUD)

### [11 U.S.C. § 548(a)(1)(B)]

53. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54. The Transfers occurred within the two-year period immediately preceding the HFT Petition Date and HF Petition Date.

55. The Defendant received the Transfers, and he continues to hold the BTC transferred in the Wallet.

56. The BTC used to pay the MOU Payment constituted property belonging to one or

10

both of the Debtors at the time of the Transfers.

57. The Debtors received less than reasonably equivalent value in exchange for the Transfers.

58. The Debtors were insolvent at the time of or became insolvent as a result of the Transfers to the Defendant.

59. At the time of the Transfers, the Debtors were engaged or were about to engage in a business and/or transaction relating to the design, manufacture and sale of special purpose BTC mining processors and computers. As a result of the Transfers, the Debtors possessed unreasonably small capital to continue its business venture, especially in light of the Debtors' liabilities.

60. At the time of the Transfers, the Debtors incurred further liabilities associated with their business enterprise beyond the Debtors' ability to repay as such debts matured.

61. By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## FIFTH CLAIM FOR RELIEF
## RECOVERY OF AVOIDED TRANSFERS
### [11 U.S.C. § 550]

62. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

63. By reason of the foregoing, the Debtors are entitled to recover the Transfers and the Refund for the benefit of the Estate pursuant to 11 U.S.C. § 550(a)(1).

## SIXTH CLAIM FOR RELIEF
## RECOVERY OF AVOIDED TRANSFERS
### [Cal. Civil Code § 3439.07]

64. The Debtors repeat and reallege the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

65. By reason of the foregoing, the Debtors are entitled to recover the Transfers and the Refund for the benefit of the Estate pursuant to California Civil Code § 3439.07.

11

**PRAYER FOR RELIEF**

WHEREFORE, the Debtors pray as follows:

66. As to the First Claim for Relief, that the Refund be avoided for the benefit of the Estate;

67. As to the Second Claim for Relief, that the Transfers be avoided for the benefit of the Estate;

68. As to the Third Claim for Relief, that the Transfers be avoided for the benefit of the Estate;

69. As to the Fourth Claim for Relief, that the Transfers be avoided for the benefit of the Estate;

70. As to the Fifth Claim for Relief, that the Estate recover the Transfers and Refund and be awarded damages, and judgment be entered in the Estate's favor against the Defendant, plus interest at the maximum legal rate from the date of each of these payments, or such other amount as shall be shown by proof prior to judgment herein;

71. As to the Sixth Claim for Relief, that the Estate recover the Transfers and Refund and be awarded damages and judgment be entered in the Estate's favor against the Defendant, plus interest at the maximum legal rate from the date of each of these payments, or such other amount as shall be shown by proof prior to judgment herein; and

72. Any and all additional and further relief as this Court may deem just and proper.

Dated: February 17, 2015      KATTEN MUCHIN ROSENMAN LLP
Jessica M. Mickelsen
Peter A. Siddiqui


By:/s/ Jessica M. Mickelsen
Counsel for Debtors and Debtors-In-Possession
HashFast Technologies LLC and HashFast LLC