KATTEN MUCHIN ROSENMAN LLP
Craig A. Barbarosh (SBN 160224)
craig.barbarosh@kattenlaw.com
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122
Telephone: (714) 966-6822

Jessica M. Mickelsen (SBN 277581)
jessica.mickelsen@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4425
Facsimile: (310) 788-4471

Peter A. Siddiqui (*pro hac vice*)
peter.siddiqui@kattenlaw.com
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone: (312) 902-5455
Facsimile: (312) 902-1061

Counsel for Debtors and Debtors-In-Possession
Hashfast Technologies LLC and HashFast LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| In re: | Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | (Substantively Consolidated with In re HashFast LLC, Case No. 14-30866) |
| Debtor and Debtor-In-Possession | Chapter 11 |
| ☒ Affects HASHFAST LLC, a Delaware limited liability company, | |
| Debtor and Debtor-In-Possession | |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, and HASHFAST LLC, a Delaware limited liability company, | Adversary Case No. 15-03011 |
| Plaintiffs, | **SUPPLEMENTAL DECLARATION OF VICTOR DELAGLIO IN SUPPORT OF MOTION FOR ISSUANCE OF RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT** |
| vs. | Hearing: |
| MARC A. LOWE, an individual, *aka* Cypherdoc and/or Cipherdoc, | Date: April 24, 2015<br>Time: 10:00 a.m. |

1

|   |   |   |
|---|---|---|
| | Defendant. | ) Place: Courtroom 22<br>) U.S. Bankruptcy Court<br>) 235 Pine Street<br>) San Francisco, CA 94104<br>)<br>) |

I, Victor Delaglio, hereby declare under penalty of perjury,

1. I am a Director at Province, Inc. ("Province"), and I am assisting the Chief Restructuring Officer ("CRO") of HashFast Technologies LLC ("HashFast Technologies") and HashFast LLC ("HashFast" and, together with HashFast Technologies, the "Debtors").

2. This Supplemental Declaration is submitted in connection with the Debtors' Reply In Support Of Debtors' Motion for Issuance of Writ of Attach Order and Writ of Attachment (the "Reply"), and in further support of the Motion itself.

## EVIDENTIARY FOUNDATION

3. I have been a Director of Province since approximately 2012. Province specializes in financial advisory, corporate reorganization, and strategic consultation services for mid-market companies, and maintains offices in Las Vegas, NV and Agoura Hills, CA. Founded in 2008, Province has successfully restructured billions of dollars in corporate and asset-backed loans across a wide range of industries and has worked with both debtors and creditors to navigate complex business issues and maximize value, including matters related to a debtor's insolvency.

4. As of approximately August 2014, when Peter Kravitz, Principal and General Counsel of Province, was designated as responsible individual, I have been assisting the Debtors with their reorganization. My assistance has included, among other things: (a) preparing required financial information for Debtors, which involves analyzing the Debtors' former business, wind-down plan and budget, assets and financial condition; and (b) advising Debtors of possible recoveries for creditors from litigation (including avoidance actions), which includes reviewing the Debtors' books and records and preparing preference and fraudulent conveyance analyses.

Case: 15-03011    Doc# 26-1    Filed: 04/17/15    Entered: 04/17/15 12:46:02    Page 2 of 5

5. In my role assisting Mr. Kravitz as responsible individual of Debtors, I have personally reviewed Debtors' relevant documents, books, records, and computerized tracking systems (including those that tracked Debtors' financial information), which I am informed were kept by Debtors in the regular course of their business, were under their custody and control, and which records and entries were made at or near the time of the acts by a person duly authorized to make the same.

6. The documents, books, records and computerized tracking systems are too voluminous to attach hereto. Therefore, I summarize my findings from the documents, books, records, and computerized tracking systems upon which I have specifically relied for this declaration. I did the same when completing my previous declaration submitted in support of the Motion, and all documents cited therein, and the personal knowledge that I gained to attest to the facts therein, came from the same documents, books, records, and computerized tracking systems. Based upon my review, I have gained personal knowledge of the facts that I set forth in this declaration (and in my previous declaration in support of the Motion) and if called upon to do so, I could and would competently testify thereto in a court of law at the hearing on the Motion, if applicable, or at any other hearing or proceeding in connection with the above-captioned action. Debtors' documents, books, records, and computerized system tracking indicate as follows:

**DEBTOR WAS INSOLVENT AT THE TIME OF THE TRANSFERS**

7. The Transfers occurred in September 2013. Debtors' consolidated balance sheet showed a negative equity balance of approximately $1.3 million as of August 31, 2013, which grew to a negative equity balance of approximately $2.6 million as September 30, 2013. Debtors' consolidated balance sheet further showed a negative equity balance of approximately $7.1 million as of December 31, 2013, which continued or grew through Debtors' petition date of May 9, 2014.

Case: 15-03011   Doc# 26-1   Filed: 04/17/15   Entered: 04/17/15 12:46:02   Page 3 of 5

8. Debtors either had a negative equity balance or were severely undercapitalized at all times during their operational history. That is because Debtors raised insufficient capital to operate their company, and they relied on capital from customer orders to research, design, and build their products. Debtors were unlikely to meet their production costs as of at least August 31, 2013 to fulfill orders when they came due.

9. Funds generated from customer orders are a liability unless or until the product is delivered. When the Transfers occurred, Debtors had a negative equity balance; in other words, they did not have sufficient assets to satisfy their liabilities.

10. At the time of the Transfers, the Debtors were unlikely to remain current with costs of production and meet delivery expectations. When the Transfers were made, Debtors were incurring further debts beyond their ability to pay.

**DEBTORS TRANSFER OF 3,000 BTCs WAS UNREASONABLY DISPROPORTIONATE**

11. I understand, based upon what I have read in the foregoing documents (some of which were attached to my previous declaration), that Debtors transferred 3,000 BTCs to Defendant, which amounted to at least $363,861.43 at that time. In my opinion, the amount paid to Defendant was unreasonably and disproportionately high in comparison to services offered. I reach this opinion based upon Debtors offer to other parties, their dire financial situation at that time, my understanding of the endorsement services that Defendant was to perform based upon the MOU, the Debtors' sales volumes, and Debtors' books and records.

12. I understand, based on Debtors books and records, that Debtors had begun advertising the BabyJet in July 2013.

13. I further understand, based on Debtors' books and records, that the BabyJet and GN1 chips were selling well from the time they were launched, which did not correlate to Defendant's endorsements. Specifically, between July and December 2013, the Debtors sold

approximately $13,000,000 in computers, chips, and accessories. Based on this, in my opinion, there is no obvious connection between Defendant's endorsements and the Debtors' sales and operations thereafter.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.

Dated: April 16, 2015

_____
Victor Delaglio