# EXHIBIT A

Venkat Balasubramani (SBN 189192)
FOCAL PLLC
800 Fifth Ave, Suite 4100
Seattle, WA 98104
Phone: (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com
Attorneys for Plaintiff
PETE MORICI

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| PETE MORICI, an individual,<br><br>           Plaintiff,<br><br>    v.<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company, HASHFAST LLC, a Delaware limited liability company, SIMON BARBER, an individual, and EDUARDO deCASTRO, an individual,<br><br>        Defendants. | Case No. _____<br><br>COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF<br><br>(1) Breach of Contract<br>(2) Fraud<br>(3) Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.<br>(4) Declaratory Relief<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Pete Morici ("*Morici*") alleges for his complaint against HashFast Technologies LLC, HashFast LLC, and the principals of HashFast (collectively "*HashFast*") as follows:

## INTRODUCTION

This is a lawsuit seeking to enforce Morici's right to a refund for product ordered from HashFast that was not delivered in a timely fashion. The product in question—computer hardware configured specifically to mine Bitcoin digital currency—loses value daily, due to the ever-increasing computing power necessary to mine the same amount of Bitcoin. Consequently, the date of delivery was one of the most critical terms of the purchase. Although HashFast represented at the time Morici placed his order, in August 2013, that delivery would

Case: 15-03011    Doc# 27    Filed: 04/17/15    Entered: 04/17/15 12:53:29    Page 2 of 16

1    occur between October 20, 2013 and October 30, 2013, and later assured Morici and other

2    customers on multiple occasions that delivery would occur within that time frame, HashFast

3    failed to make timely delivery.  Instead, HashFast notified Morici on October 23, 2013, that

4    delivery would not occur until mid-November.  However, on November 7, 2013, HashFast

5    again changed its delivery date, notifying Morici that delivery would not occur until mid-

6    December.  Upon receiving HashFast's November notification, Morici cancelled his order and

7    requested a refund of the Bitcoin he paid to HashFast to purchase the product.

8        Despite repeated requests, HashFast has failed to offer Morici a full refund, likely due to

9    the fact that between the time Morici paid for the product and present day, the value of Bitcoin

10   has increased dramatically.  HashFast should not be unjustly enriched as a result of its improper

11   actions and the change in value of the Bitcoin.  Morici should be entitled to a refund, and this

12   refund should be tendered in Bitcoin (*i.e.*, the number of Bitcoin that Morici tendered to

13   HashFast). This result is mandated both by the relevant legal principles and equity, and by the

14   understanding of the parties.  HashFast has engaged in a systematic campaign of stringing along

15   its customers and making misleading statements and should not be allowed to profit from its

16   improper conduct.  To the contrary, HashFast should be required to disgorge its ill-gotten gains.

17                                  **THE PARTIES**

18        1.      Morici is a resident of, and domiciled in, the State of Maryland.

19        2.      On information and belief, HashFast Technologies LLC is a limited liability

20   company organized and existing under the laws of the State of California, and HashFast LLC is

21   a limited liability company organized and existing under the laws of the State of Delaware.  The

22   companies, which on information and belief are closely affiliated, or alter-egos for one another,

23   both have their principal places of business in San Jose, California.

24        3.      On information and belief, Simon Barber and Eduardo deCastro are both

25   California residents, founders, members (owners) and officers of each of the HashFast limited

26   liability company entities.

27        4.      At all times mentioned herein, defendants, and each of them, were an owner, a

Case No. _____

1 | co-owner, an agent, representative and/or alter ego of their co-defendants, or otherwise acting

2 | on behalf of each and every remaining defendant and, in committing the acts hereinafter

3 | alleged, were acting with the course and scope of their authorities as an owner, co-owner, agent,

4 | representative and/or alter ego of its co-defendants, with the full knowledge, permission and

5 | consent of each and every other defendant, each co-defendant having ratified the acts of the

6 | other co-defendants.

7 |       5.      Wherever appearing in this complaint, each and every reference to defendants, or

8 | any of them, is intended to be and shall be a reference to all defendants hereto, and to each of

9 | them, unless said reference is otherwise specifically qualified.

10 | **JURISDICTION AND VENUE**

11 |       6.      HashFast Technologies LLC is subject to personal jurisdiction in the State of

12 | California because it is a California limited liability company having its principal place of

13 | business in San Jose, California, and it is engaged in systematic and continuous contacts with

14 | the State of California by virtue of its business activities here.  HashFast LLC is also subject to

15 | personal jurisdiction in the State of California because it has its principal place of business in

16 | the State of California and is engaged in systematic and continuous contacts with the State of

17 | California by virtue of its business activities here.  The principals of HashFast are likewise

18 | subject to jurisdiction in the State of California either by being residents of the State of

19 | California, or by reason of their extensive contacts with the State of California, in the form of

20 | HashFast-related activities.  Alternatively, to the extent there is no general jurisdiction over the

21 | principals of HashFast, they have purposefully aimed their conduct to the State of California,

22 | through their activities with HashFast, and should reasonably expect to be sued in the State of

23 | California.

24 |       7.      The Court has jurisdiction over the subject matter of the dispute under 28 USC §

25 | 1332.  Morici and the HashFast entities and principals are citizens of different states and the

26 | amount in controversy exceeds seventy five thousand dollars ($75,000.00).

27 |       8.      Venue is proper in this judicial district under 28 USC § 1391(b)(1) and (2)

COMPLAINT - 3                                          Case No. _____

1    because HashFast is based in this judicial district and, alternatively, because a substantial part of

2    the events or omissions giving rise to the Morici's claims occurred, or a substantial part of the

3    property that is the subject of the action is situated in this judicial district.

4                                                    **FACTS**

5         **BITCOINS BACKGROUND**

6         9.      Bitcoin is a peer-to-peer payment network that uses digital currency known as

7    "Bitcoin" (abbreviated as "BTC"). The Bitcoin network is decentralized, with no authority

8    overseeing its operation, and uses open-source encryption software for transactions. Every

9    Bitcoin transaction is permanently recorded and is maintained in a transparent public ledger.

10   The original technical paper describing Bitcoin can be found here: http://bitcoin.org/bitcoin.pdf.

11        10.     Payment transactions are processed by a network of private computers

12   distributed throughout the world which, typically, have been specially configured for processing

13   Bitcoin transactions. These computers are commonly referred to as "Bitcoin computers," and

14   the operators of such computers are known as "miners." Miners are partially compensated for

15   the work they perform by receiving fees for the Bitcoin transactions that they process through

16   their Bitcoin computers.

17        11.     The Bitcoin system also incentivizes miners to process transactions by allowing

18   miners to create new Bitcoins for themselves based on the number of "blocks" discovered.

19   Blocks are files containing data regarding Bitcoin transactions that have yet to be recorded in

20   the public ledger. The process of discovering a block involves calculating a SHA256 hash, an

21   algorithm that is very difficult to solve, over and over again until the miner finds an input that

22   matches an expected output. The chance that a miner will discover a given block, and thereby

23   claim its Bitcoin "reward" before another miner, are based on the miner's hash rate relative to

24   the total hash rate of all Bitcoin miners on the network. This incentive creates an inherent

25   competitive environment in which miners seek to increase their rate of processing.

26   Consequently, miners are constantly looking to increase the processing power of their Bitcoin

27   computers. Thus, acquisition of the latest technology is crucial for miners, and to those who

COMPLAINT - 4                                          Case No. _____

1  purchase and sell Bitcoin mining equipment, the timing of shipment is inherently important.

2      12.      The difficulty of Bitcoin mining is continually adjusted based on the rate at

3  which blocks are created.  Thus, as competition increases, so does the difficulty in processing.

4  As a result, a Bitcoin mining computer continually becomes less valuable over time, as it

5  becomes relatively less efficient at processing Bitcoin blocks.  Eventually, without upgrading

6  technology, the electricity required for processing will cost a miner more than the Bitcoin

7  computer is able to generate.

8      13.      As the adoption of the Bitcoin system has increased, technology companies have

9  sprung up to serve the Bitcoin mining market, developing specialized computers to conduct

10  Bitcoin mining.  Defendant HashFast is one such company.

11      14.      Bitcoin value fluctuates based on supply and demand.  Importantly, the Bitcoin

12  system includes a cap on the total number of Bitcoins that will be made available—21,000,000

13  Bitcoins.  Currently, the number of Bitcoins in circulation is approximately 12,185,000.

14  **MORICI'S ORDERS FROM HASHFAST**

15      15.      Like many members of the Bitcoin community, Mr. Morici was a participant in

16  the internet message board and community known as Bitcoin Talk.  HashFast was also a

17  participant in this community, and starting in July 2013, made several posts about their soon-to-

18  be-launched Bitcoin mining computer.

19      16.      HashFast engaged in a wide range of promotion via Bitcoin Talk, including

20  (1) inviting members to visit their offices, (2) announcing partnerships and supply

21  arrangements, and (3) stating that their order process would be fully transparent.  For example,

22  in late August, HashFast purported to "announce some specs for [HashFast's] mining chip,"

23  going so far as to attach a letter from a third party partner.  HashFast said that they would also

24  be open and transparent about their sales queue.

25      17.      Most importantly, HashFast posted publicly statements that shipments would be

26  made in late October.  On August 5, 2013, HashFast stated "We will be shipping [the mining

27  product] in October."  A screenshot of this post by HashFast is attached as **Exhibit A** hereto.  A

1   screenshot of this post may also be viewed at:

2   https://bitcointalk.org/index.php?topic=262052.msg2869016#msg2869016.  On August 8, 2013,

3   HashFast stated that "HashFast is launching sales of the Baby Jet [mining product]," and further

4   stated "Shipments begin: October 20th-30th, in order of purchase."  A screenshot of this post by

5   HashFast is attached as **Exhibit B** hereto.  A screenshot of this post may also be viewed at:

6   https://bitcointalk.org/index.php?topic=270384.msg2894615#msg2894615.

7          18.     HashFast operates a website located at http://www.hashfast.com (the "Site").

8   HashFast describes itself on the Site as a "leader in Bitcoin mining technology."  *See*

9   http://hashfast.com/about-us/.  The domain name <hashfast.com> is registered to "Edward

10  Decastro."

11         19.     On August 10, 2013, Mr. Morici visited the Site in the course of deciding

12  whether to order a Bitcoin mining computer from HashFast.  After reviewing the product

13  information provided on the Site for HashFast's "Baby Jet" Bitcoin mining computer, including

14  the product's technical specifications and HashFast's stated delivery dates, Mr. Morici decided

15  that the Baby Jet was the product he wished to purchase.

16         20.     In choosing the Baby Jet, Mr. Morici relied on HashFast's representations and

17  warranties on the Site, including HashFast's claim that it had units of the Baby Jet "in stock,"

18  with shipments starting "October 20-30."  A screenshot of the webpage on the Site that was

19  substantially similar to what was viewed by Mr. Morici at the time of placing his order is

20  attached as **Exhibit C** hereto.  Nothing on the product page indicated that there was any

21  uncertainty as to the current availability of the product or HashFast's ability to ship the product

22  in a timely fashion.

23         21.     Although the Site contained functionality that allowed online ordering, on the

24  date Mr. Morici visited the Site (August 10, 2013), the Site was unavailable to process orders.

25  Therefore, Mr. Morici contacted Hashfast that day, and in response, John Skrodenis, Vice

26  President of HashFast, instructed Mr. Morici to place his order manually (by telephone and

27  email).  In an email to Mr. Morici, Mr. Skrodenis offered "free shipping."

22.     In a subsequent telephone conversation with Mr. Skrodenis that same day, Mr. Morici specifically raised the question of whether HashFast's advertised delivery dates of October 20-30 were firm, and whether there was any possibility that HashFast would not meet its advertised dates. Mr. Skrodenis was emphatic in assuring Mr. Morici, saying: "that is not going to happen."

23.     Later that day, per Mr. Skrodenis' instructions, Mr. Morici placed an order with HashFast for two (2) Baby Jets at a total cost of $11,200 USD. Despite Mr. Skrodenis' promise of free shipping, HashFast also charged Mr. Morici $307.38 USD for shipping, making the total transaction cost $11,507.38 USD. Payment on the transaction was to be made in Bitcoin, with the cost amounting to 107.692308 BTC for the Baby Jets, 2.95557692 BTC for shipping, for a total of 110.67773274 BTC.

24.     HashFast stated in public posts on Bitcoin Talk that it would have credit card processing available, but at the time Mr. Morici and numerous others placed their orders, the only payment option made available by HashFast was in BTC. Had credit card processing been made available by HashFast, Mr. Morici would have opted to pay using his credit card.

25.     Neither the applicable terms of purchase, nor HashFast's public comments indicated that refunds, if necessary, would be paid in U.S. Dollars. In fact, HashFast represented that refunds would be paid in Bitcoin. In a public post on Bitcoin Talk made on August 10, 2013, the day Mr. Morici placed his order, HashFast, through Mr. Barber, advised that "Orders are taken in BTC, in the unlikely event we get to refunds they will be given in BTC." Attached as **Exhibit D** hereto is a true and correct copy of this post. The post may also be viewed at: https://bitcointalk.org/index.php?topic=270384.msg2903338#msg2903338. Another customer was also advised specifically that refunds would be paid in BTC. Attached as **Exhibit E** hereto is a true and correct copy of this post. The post may also be viewed at: https://bitcointalk.org/index.php?topic=262052.msg3452898#msg3452898.

26.     Mr. Morici confirmed his order via email that day and paid a deposit in the amount of 110.647885 BTC. On August 15, 2013, in response to a follow-up query from Mr.

1    Morici, HashFast advised that "[the] transaction successfully went through, and your order has

2    been complete."

3            27.     On August 19, 2013, nine days <u>after</u> Mr. Morici placed his order, HashFast sent

4    an "order confirmation" to Mr. Morici via email.  The "order confirmation" contained additional

5    terms regarding the delivery date, and also contained an attachment, on a separate page, with

6    further "terms and conditions."  The email to Mr. Morici transmitting the order confirmation did

7    not reference the additional terms of the "order confirmation," nor did the email indicate that

8    further "terms and conditions" were attached to the order confirmation.  Mr. Morici did not

9    review any of these additional terms or agree to these terms.

10           28.     Mr. Morici's order was order number M002, which, according to a list posted by

11   HashFast on the Site (at http://hashfast.com/order-chain/),  placed him in "Batch 1" of the

12   customers who ordered the Baby Jet (*i.e.*, these customers would be the first to receive the Baby

13   Jet).

14           29.     As HashFast is undoubtedly aware, Bitcoin mining computers lose their value at

15   a rapid rate due to the fact that more powerful computers are needed to effectively "mine" for

16   Bitcoins as time goes on.  Cognizant of this, Mr. Morici placed his order with the expectation

17   and understanding that his computers would be delivered in October.  Indeed, to Mr. Morici,

18   this was a critical term of the transaction.

19           **THE MINER PROTECTION PROGRAM AND VAGUE SPECIFICATIONS**

20           30.     Mr. Morici's order was covered by what HashFast calls its "Miner Protection

21   Program" (MPP) (https://hashfast.com/miner-protection-program/), which HashFast announced

22   on August 13, 2013, and agreed to provide retroactively to all purchases of Batch 1 Baby Jets.

23   The MPP ostensibly provided that if a purchaser did not break even in Bitcoin terms (through

24   mining) within ninety (90) days after receiving their order, HashFast would automatically

25   supply the purchaser up to 400% more hashing power in the form of "modules."  A module, in

26   Hashfast's parlance, is one of Hashfast's chips on a printed circuit board, to be used in

27   connection with the Baby Jet mining computer.

COMPLAINT - 8                                              Case No. _____

31.     HashFasht's rollout of the Miner Protection Program is further evidence of its understanding that the timing of shipment of the product was critically important.

32.     In light of delays in fulfilling customer orders, HashFast modified the terms of the MPP, representing that they would start the ninety day clock for the MPP as if they had shipped their products by their originally advertised October 30, 2013 shipping date.  In other words, HashFast agreed to give all customers similarly situated to Mr. Morici four additional modules some time after February 1, 2014, if the customers did not break even through their mining activities.

33.     In product specifications published on the Site prior to Mr. Morici placing his order, HashFast stated that the Baby Jet contained a chip capable of processing at a speed of 400 Gh/s (400 billion hashes per second) while consuming 1 watt per Gh/s.  Subsequently, after testing, HashFast stated that the chip contained in the Baby Jet could run at up to 500 Gh/s.  However, it wasn't clear what the power consumption was at that speed, or if that speed was sustainable without over heating during 24/7 operation.

34.     While processing speed is obviously important, power consumption also matters because at some point, as the Bitcoin computer produces less and less Bitcoin each month, the USD value of the Bitcoin being produced is less than the cost of electricity required to operate the Bitcoin computer.  For example, at the current Bitcoin exchange rate, the Baby Jet computer is likely to become unprofitable in late 2014.

35.     To date, despite promises to do so, HashFast has yet to release the full specifications for the product.

**DELAYS AND CANCELLATION**

36.     Following placement of Mr. Morici's order, HashFast continued to reaffirm that it would make deliveries in October.  On August 11, 2013, HashFast stated in a post on Bitcoin Talk: "[w]e understand the importance of schedule . . . and we're confident we can deliver."  Attached as **Exhibit F** hereto is a true and correct copy of this post.  The post can also be viewed at: https://bitcointalk.org/index.php?topic=262052.msg2908364#msg2908364.

COMPLAINT - 9                                           Case No. _____

1       37.     Also on August 11, 2013, in a post on Bitcoin Talk, a poster posited that if

2 HashFast ended up shipping in December, rather than October, HashFast's customers would

3 "take a bath." In response, Mr. deCastro stated "we wont," and also stated that HashFast would

4 "protect" its customers "against hashrate increases." Attached as **Exhibit G** hereto is a true and

5 correct copy of this post. The post can also be viewed at:

6 https://bitcointalk.org/index.php?topic=262052.msg2909687#msg2909687.

7       38.     On August 18, 2013, in response to a pointed question on Bitcoin Talk from a

8 customer as to whether "the expected ship date of late October still look[ed] achievable?" John

9 Skrodenis of HashFast responded "Yes. We are exactly on track." Attached as **Exhibit H**

10 hereto is a true and correct copy of this post. The post may also be viewed at:

11 https://bitcointalk.org/index.php?topic=276827.msg2954679#msg2954679.

12       39.     Nevertheless, on October 23, 2013, HashFast informed Mr. Morici via email that

13 his initial order would be delayed because one of HashFast's vendors allegedly had not supplied

14 it with certain components necessary to produce the products in question. This came as a

15 surprise to Mr. Morici, because HashFast represented at the time Mr. Morici placed his order

16 that it had a sufficient number of units of the Baby Jet mining computers "in-stock," with

17 shipments starting "October 20-30." Additionally, Mr. Morici had been advised during a phone

18 call with Mr. Skrodenis, HashFast's Vice President, and by HashFast's principals repeatedly on

19 Bitcoin Talk, that there would be no slippage in the delivery dates. Based on those

20 representations, Mr. Morici reasonably believed that the order would ship by no later than

21 October 30th.

22       40.     Though HashFast's October 23, 2013 email to Mr. Morici goes on to admit that

23 "time is money," HashFast informed Mr. Morici that his shipment would not be delivered by

24 late October, but instead would be delivered in mid-November.

25       41.     HashFast failed to deliver to Mr. Morici his initial order in October as promised,

26 and incredibly, on November 7, 2013, HashFast sent Mr. Morici yet another email informing

27 him that his order would not be shipped until mid-December.

42.     None of the email notices sent by HashFast contained any reference to Mr. Morici's cancellation or refund rights.

43.     As HashFast itself has admitted in its marketing material, in email correspondence with Mr. Morici, and in posts at Bitcoin Talk, the value of a Bitcoin mining computer decreases as time goes on.  Realizing that the Baby Jet Bitcoin computers he ordered would be of considerably less value in light of the new estimated delivery date (which apparently was a moving target), and more troubling, having legitimate concerns that he had been defrauded, at 3:42 PM on November 11, 2013, Mr. Morici sent an email to HashFast canceling his order and requesting a full refund of his deposit (in BTC, as agreed to by HashFast).

44.     HashFast did not respond to Mr. Morici's refund request until over a month later.

45.     On December 27, 2013, HashFast sent out an email to its customers, including Mr. Morici, stating that they expected to be "on track to ship . . . orders December 31." However, on December 29, 2013, HashFast sent out a follow-up email stating that they were "kicking off . . . shipments in the next few days," but customers who were interested in refunds could initiate refunds and be paid Bitcoin calculated at the exchange rate on the date of the refund.  The offer of refund in U.S. Dollars came as a surprise to Mr. Morici, given the assurances and agreement of HashFast that refunds would be made in BTC.

46.     On December 31, 2013, HashFast sent out another email to Mr. Morici, advising that HashFast had "hoped to resolve reliability issues sooner so that [HashFast] could begin bulk production and be on track to ship Batch 1 customer orders on December 31." Unfortunately, the email continued, stating that "the issues have not been adequately resolved, and therefore [HashFast is] unable to ship the remaining outstanding orders by December 31st."

47.     Attached to HashFast's December 31st email was a detailed and onerous release form purporting to require, as a condition of obtaining a refund, among other things, a promise to not "disparage, libel, or criticize [HashFast] or publish any statement concerning [HashFast] this is critical."

COMPLAINT - 11                                    Case No. _____

48.     HashFast purported to ship an item to Morici, but the shipment was partial, and in any event, came too little too late.  Given the more than two month delay in shipment, Mr. Morici cancelled the order.

## FIRST CLAIM FOR RELIEF

(Breach of Contract)

49.     Morici realleges and incorporates by reference all preceding paragraphs of the Complaint.

50.     Morici's order placed via telephone on August 10, 2013, was an enforceable agreement which required delivery of two Baby Jets by no later than October 30, 2013.

51.     HashFast was aware of the time-sensitive nature of the delivery date for the product and made specific assurances to Mr. Morici regarding the delivery deadline. HashFast's failure to deliver the product by its advertised delivery date is a material breach of the agreement.

52.     Morici has been damaged by HashFast's actions and is entitled to be compensated for any resulting damages, or alternatively, is entitled to a refund (in BTC) as per the terms of the contract, or to rescind the contract and receive restitution.

## SECOND CLAIM FOR RELIEF

(Fraud)

53.     Morici realleges and incorporates by reference all preceding paragraphs of the Complaint.

54.     HashFast and its principals made false statements of material fact to Morici regarding its product, including: (1) the delivery date for the product; (2) whether HashFast actually had any product in stock; and (3) the computing power of the product and the efficacy of the MPP.

55.     Morici relied on the statements to his detriment and his reliance was reasonable.

56.     Morici has been damaged as a result of such reliance and should be compensated for any injury suffered by him.

COMPLAINT - 12                                              Case No. _____

## THIRD CLAIM FOR RELIEF

(Violation of Cal. Bus. & Prof. Code §17200, *et seq.*)

57.    Morici realleges and incorporates by reference all preceding paragraphs of the Complaint.

58.    The acts and practices of HashFast as alleged herein constitute unlawful business acts and practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*. HashFast has engaged in unlawful business acts and practices as alleged above, but in particular by their violation of Cal. Civ. Code § 1723, which requires merchants to "conspicuously" display any no-refund policies, and to provide refunds to customers who attempt to return goods within 30 days of purchase. HashFast has engaged in unfair business practices as alleged above, but in particular by failing to provide Morici with the option to consent to a delayed shipping date or cancel his order, in violation of 16 C.F.R. § 435.2. Further, HashFast has engaged in unfair business practices as alleged above, but in particular by inducing Mr. Morici to purchase HashFast's products by making inaccurate representations regarding delivery times and failing to follow the aforementioned laws governing Mr. Morici's cancellation and refund rights.

59.    HashFast's actions have caused Morici damage.

60.    HashFast has been unjustly enriched and should be required to make restitution to Morici pursuant to Cal. Bus. & Prof. Code § 1723.

## FOURTH CLAIM FOR RELIEF

(Declaratory Relief)

61.    Morici realleges and incorporates by reference all preceding paragraphs of the Complaint.

62.    Although HashFast and Morici are parties to a contract, HashFast has at several turns attempted to impose onerous terms on Morici. Specifically, HashFast denied Morici's right to cancel his order and receive a refund.

63.    Specifically, although state and federal law require HashFast to provide Mr. Morici with a full refund due to HashFast's failure to timely deliver the product, HashFast

1   attempted to condition Mr. Morici's request for a refund on numerous additional terms,

2   including a release of claims, a refund amount that calculates the amount of the refund in then-

3   current Bitcoin exchange rates, and a promise to not make any critical statements about

4   HashFast.

5        64.   Mr. Morici is entitled to a declaration that these terms are unenforceable and

6   contrary to state and federal law.

7                          **PRAYER FOR RELIEF**

8        Morici requests entry of judgment as follows:

9        a.   Damages proximately flowing from HashFast's breach of the agreement;

10       b.   At Mr. Morici's election, rescission of the agreement;

11       c.   Damages and all other available remedies caused by HashFast's fraudulent and

12   misleading statements;

13       d.   Restitution and other relief available under Cal. Bus. & Prof. Code §§ 17200, *et*

14   *seq.*;

15       e.   A declaration that the additional terms HashFast has attempted to impose on

16   Morici in order to obtain a refund are unlawful and unenforceable;

17       f.   An order requiring HashFast to place Morici in the same position as he would

18   have been prior to placing the order;

19       g.   Damages to be entered in BTC, as the operative currency for the transaction and

20   as per the parties' understanding;

21       h.   An order that the principals of HashFast are personally liable for any award

22   against HashFast; and

23       i.   Other and further relief, in law or equity, that the Court may deem appropriate

24   and just.

25   //

26   //

27   //

COMPLAINT - 14                                    Case No. _____

1    Dated: January 7, 2014                  Respectfully submitted,

2                                            FOCAL PLLC

3                                            By: s/Venkat Balasubramani

4                                                Venkat Balasubramani (SBN 189192)

5                                            800 Fifth Ave, Suite 4100
                                             Seattle, WA 98104
6                                            Phone: (206) 529-4827
                                             Fax: (206) 260-3966
7                                            Email: venkat@focallaw.com

8
                                             *Attorneys for Plaintiff*
9                                            PETE MORICI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT - 15                                        Case No. _____