BRIAN E. KLEIN (SBN 258246)
BAKER MARQUART LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
Email: bklein@bakermarquart.com

DAVID M. POITRAS, APC (SBN 141309)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
Email: dpoitras@jmbm.com

Attorneys for Defendant Dr. Marc A. Lowe

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | (Substantively Consolidated with In re HashFast LLC, Case No. 14-30866) |
| Debtor. | Chapter 11 |
| | Adversary Case No. 15-03011 |
| MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE, | **DEFENDANT DR. MARC A. LOWE'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, vs. | Hearing: |
| MARC A. LOWE, an individual, aka Cypherdoc and/or Cipherdoc, | Date: February 19, 2016<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Avenue, 16th Floor<br>Courtroom 17<br>San Francisco, CA 94102 |
| Defendant. | |

PRINTED ON RECYCLED PAPER
LA 12593803v1

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 2

FACTUAL BACKGROUND ................................................................................................. 3

SUMMARY JUDGMENT STANDARD ............................................................................... 4

ARGUMENT .......................................................................................................................... 5

    A. The Bitcoin Dr. Lowe Received From HashFast Was Currency ............................... 5

        1. In contexts similar to those in this case, the federal government treats bitcoin as a currency ............................................................................. 5
        2. Relevant case law treats bitcoin as a currency not a commodity ..................... 7

    B. The Trustee's and HashFast's Actions Support Treating Bitcoin as a Currency ................................................................................................................... 9

    C. Even if the Court finds that Bitcoin is a Commodity, the Court Should Only Put the Estate in a Pre-Transfer Position ....................................................... 10

    D. Satisfaction of an Antecedent Debt is Not a Fraudulent Transfer ........................... 13

CONCLUSION ..................................................................................................................... 14

PRINTED ON RECYCLED PAPER
LA 12593803v1
JMBM Jeffer Mangels Butler & Mitchell LLP

# TABLE OF AUTHORITIES

**CASES**

PAGE(S)

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)............................................................................................................4

*Atlanta Shipping Corporation, Inc. v. Chemical Bank*,
 818 F.2d 240 (2d Cir. 1987)...............................................................................................13

*BFP v. Resolution Trust Corp.*
 511 U.S. 531 (1994)..........................................................................................................12

*County of Tuolumne v. Sonora Cmty. Hosp.*,
 236 F.3d 1148 (9th Cir.2001).............................................................................................4

*In re Aero-Fastener*,
 177 B.R. 120 (Bankr. D.Mass. 1994)................................................................................11

*In re Brobeck, Phleger & Harrison, LLP*
 408 B.R. 340 (Bankr. N.D. Cal. 2009)..............................................................................12

*In re First Software Corp.*,
 107 B.R. 417 (D. Mass. 1989)...........................................................................................11

*In re Heller Ehrman LLP*,
 2014 WL 323068 (Bankr. N.D. Cal. Jan. 28, 2014)..........................................................11

*In re Integra Realty Resources, Inc.*,
 354 F.3d 1246 (10th Cir. 2004).........................................................................................11

*In re James B. Downing & Co.*,
 74 B.R. 906 (Bankr. N.D.Ill. 1997)...................................................................................11

*In re McLaughlin*,
 183 B.R. 171 (Bankr. W.D. Wis. 1995)............................................................................11

*In re Newman*,
 15 B.R. 658 (S.D.N.Y. 1981)............................................................................................12

*In re Ozark Restaurant Equipment Co., Inc.*,
 850 F.2d 342 (8th Cir. 1988).............................................................................................12

*In re Pajaro Dunes Rental Agency, Inc.*,
 174 B.R. 557 (Bankr. N.D.Cal. 1994)...............................................................................12

*In re Rinehart*,
 2012 WL 3018291 (Bankr. D. Idaho July 24, 2012)..........................................................4

PRINTED ON
RECYCLED PAPER
LA 12593803v1

JMBM Jeffer Mangels Butler & Mitchell LLP

*In re Taylor*,
   599 F.3d 880 ..........................................................................................................................11

*In re United Energy Corporation*,
   102 B.R. 757 (BAP 9th Cir. 1989) ......................................................................................13

*Joseph v. Madray (In re Brun )*,
   360 B.R. 669 (Bankr.C.D.Cal.2007) ...................................................................................11

*Mayors v. Commissioner of Internal Revenue*,
   785 F.2d 757 (9th Cir. 1986) ...............................................................................................13

*North Slope Borough v. Rogstad (In re Rogstad)*,
   126 F.3d 1224 (9th Cir. 1997) ...............................................................................................4

*Philip Morris Inc. v. C.I.R.*,
   71 F.3d 1040 (2d Cir. 1995) (*Id.* at Tab 7, pg. 2.) ...................................................................6

*Pritchard v. Brown (In re Brown)*,
   118 B.R. 57 (Bankr. N.D.Tex. 1990) ...................................................................................11

*Sec. & Exch. Comm'n v. Shavers*,
   No. 2013 WL 4028182 (E.D. Tex. Aug. 6, 2013) ........................................................5, 6, 8, 9

*U.S. v. Brown*,
   68 F.Supp.3d 783 ....................................................................................................................8

*U.S. v. Budovsky*,
   2015 WL 5602853 (S.D.N.Y. 2015) ......................................................................................8

*U.S. v. Faiella*,
   39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) .............................................................................8

*U.S. v. Ulbricht*,
   31 F.Supp.3d 540 (S.D.N.Y. 2014) ...................................................................................7, 8

**STATUTES**      PAGE(S)

11 U.S.C.
   § 548(c) .................................................................................................................12
   § 548(d)(2)(A) .......................................................................................................13

18 U.S.C. § 1960 ..............................................................................................................8

Bank Secrecy Act .............................................................................................................5

Cal. Civ. Code § 3439.03 ................................................................................................13

Cal. Civil Code §3439.08 ................................................................................................12

7 U.S. Code § 1(a)(9) .......................................................................................................7

**OTHER AUTHORITIES**

4 *Collier* ¶ 548.09 at 548-116 .......................................................................................12

Federal Rule of Bankruptcy Procedure 7056 ...................................................................4

Federal Rule of Civil Procedure 56 ..................................................................................4

U.S. Securities and Exchange Commission .....................................................................2

# INTRODUCTION

Defendant Dr. Marc A. Lowe ("Dr. Lowe") opposes the Liquidating Trustee's ("Trustee") Motion for Partial Summary Judgment (the "Motion"). The Trustee has failed to show that the bitcoin HashFast Technologies, LLC ("HashFast" or the "Debtor") sent Dr. Lowe in compensation for his significant services should be treated as a commodity not a currency. Indeed, the opposite is true. The bitcoin Dr. Lowe received should be treated as a currency and partial summary judgment should be granted in Dr. Lowe's favor.

How federal agencies and merchants treat bitcoin, case law, HashFast's actions before and after filing for bankruptcy, the Trustee's own actions since then, and the equities, all unequivocally favor this position. Multiple federal agencies (including the U.S. Securities and Exchange Commission "SEC") and the U.S. Treasury Department, both of which the Trustee fails to even reference in the Motion) have weighed in that bitcoin is a currency. Even the two agencies the Trustee's Motion relies on (the Internal Revenue Service ("IRS") and the U.S. Commodity Futures Trading Commission ("CFTC")) treat bitcoin the very same way they treat currencies other than the U.S. dollar ("USD"), for example, the Euro. Every case the Trustee cites, and even those he does not cite, treat bitcoin as a currency, not a commodity. And everything about the way HashFast treated bitcoin before and after its bankruptcy filing in connection with Dr. Lowe, its customers, and others with whom it dealt, and how the Trustee has treated bitcoin post-bankruptcy when dealing with creditors (which the Trustee also fails to mention), shows that bitcoin should be considered a currency in this bankruptcy case. Indeed, because of the prior positions taken by the bankruptcy estate in the main case and this adversary proceeding, the Trustee is judicially estopped from arguing that bitcoin is a commodity here.

The Trustee's claim that bitcoin is a commodity rests on a misleading and woefully incomplete recitation of the pertinent facts and law. The Trustee is simply looking for an unmerited windfall because the 3,000 bitcoins Dr. Lowe was paid are now worth over $1 million, while at the time he was paid them they were worth approximately $300,000. Both the law and the equities

dictate that the Court should not provide the Trustee with such a windfall under the facts and circumstances of this case,[1] or the concomitant prejudice that Dr. Lowe would suffer, unnecessarily.

For all these reasons, the Motion should be denied, and the Court should find that bitcoin is currency for all purposes when determining value in this case, and should determine such value as of the date of the transfer(s) (*i.e.*, that the value Dr. Lowe received from the HashFast was approximately $300,000).

## FACTUAL BACKGROUND

On July 24, 2013, Dr. Lowe became aware of HashFast through HashFast's public announcement on Bitcointalk in the hardware forum. (*See*, Declaration of Dr. Lowe ("Lowe Decl.") at ¶ 9.) On or around August 7, 2013, pursuant to the express terms of that certain Memorandum of Understanding (the "MOU") between Dr. Lowe and HashFast, Dr. Lowe agreed to endorse HashFast's BabyJet mining hardware in return for payment of 10% of the bases sales price of the first 550 BabyJets sold by the Debtor. (*Id.* at ¶ 14.) At all times relevant hereto, the sales price for the BabyJets at issue was denominated by the Debtor in USD, although customers could only purchase BabyJets on the HashFast website with bitcoin; notwithstanding, various parties were allowed to purchase BabyJets with other (fiat) money.[2] (*Id.* at ¶ 15.) As set forth in the MOU, the base sale price of the initial batch of 550 BabyJets was $5,600, so this meant if all of the initial 550 BabyJets sold, Dr. Lowe would be entitled to receive bitcoin worth $308,000 (550 x $5,600 = $3.08 million x 10% = $308,000). (*Id.* at ¶ 27.)

As a result of Dr. Lowe's extensive efforts, the initial run of 550 BabyJets sold out in 17 days (from August 8–25), and Dr. Lowe received payment for his services per the terms of the MOU, spread out during September 2013. (*Id.* at ¶ 24.) As agreed by the parties pursuant to the MOU, Dr. Lowe was paid for his services in bitcoin. (*Id.* at ¶ 25.) Both parties agree that Dr. Lowe

---

[1] After all, under the facts of this case, such windfall would not inure to the benefit of any creditors in this case, other than the professionals employed prior to confirmation of the Liquidating Plan.

[2] Fiat money is a currency established as money by government regulation or law.

received 3,000 bitcoins from HashFast pursuant to the MOU (representing the agreed upon value of his services at the time of service/receipt).

No former HashFast employee has been deposed yet (in fact, no depositions at all have taken place as yet). That said it is expected they would testify that they viewed the bitcoin paid to Dr. Lowe as a currency. Accordingly, if the Court deems such facts and information to be relevant to a determination of the issues raised by the Motion, Dr. Lowe submits that the Motion is premature.

## SUMMARY JUDGMENT STANDARD

"In adversary proceedings before the bankruptcy court, the familiar summary judgment standard established in Federal Rule of Civil Procedure 56 applies." *See* Fed. R. Bankr.P. 7056; *North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997); *In re Rinehart*, 2012 WL 3018291, at *2 (Bankr. D. Idaho July 24, 2012). Summary judgment is only proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056. An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Id.* at 256-57. The Court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

# ARGUMENT

The bitcoin Dr. Lowe received from HashFast should be treated as currency, not a commodity. That was how HashFast intended bitcoin to be treated at the time it sent the bitcoin to Dr. Lowe, and that is how federal agencies, merchants, courts, the Debtor, and the Trustee himself have treated bitcoin. The Court should not grant the Trustee the undeserved windfall he is seeking.

**A.  The Bitcoin Dr. Lowe Received From HashFast Was Currency**

**1.  In contexts similar to those in this case, the federal government treats bitcoin as a currency.**

A number of federal agencies have weighed in on whether bitcoin is a currency or a commodity to one extent or another. A fair review of those agencies' positions reveals that the bitcoin Dr. Lowe received from HashFast should be treated as a currency, not a commodity.

Starting from the beginning, the Treasury Department's Financial Crimes Enforcement Network ("FinCEN") issued the first federal guidance covering bitcoins. In March 2013, FinCEN stated that virtual currencies, like bitcoin, are to be regulated the same as currency for the purposes of the Bank Secrecy Act and FinCEN regulations. (*See*, Dr. Lowe's Compendium of Federal Authorities, Guidelines and Regulations Governing Bitcoin (the "Compendium") filed in support of this Opposition, at Tab 1.) Importantly, in doing so, FinCEN noted that the difference between virtual currency, like bitcoin, and "real" currency was essentially the fact that virtual currency is not issued by a sovereign government. (*Id.*, pg. 1 "Currency v. Virtual Currency".) In most other ways, FinCEN noted, virtual currency behaves the same as currency. (*Id.*) Accordingly, FinCEN's guidance calls for regulating virtual currency in the same manner as currency. This supports a similar conclusion here, where instead of being paid his commission in USD, Dr. Lowe was paid in bitcoin.

The SEC has also staked out a position that supports Dr. Lowe. Soon after the FinCEN guidance was issued, in August 2013, the SEC successfully argued in a court in Texas that bitcoin should be considered money. *Sec. & Exch. Comm'n v. Shavers*, No. 2013 WL 4028182, at *1 (E.D. Tex. Aug. 6, 2013) (Compendium at Tab 5). The SEC's position is (and the district court so held) that when someone pays with bitcoin, they pay with currency for the purposes of SEC regulations,

-5-

because, bitcoin's purpose and the way it is utilized in the marketplace is as a currency. *Id.* at 4 (SEC complaint) and 5. The SEC's position, and the district court's finding upholding it, lends further support to Dr. Lowe's position.

In addition to the Treasury Department and SEC, the Consumer Financial Protection Bureau ("CFPB") issued guidance in August 2014 that defines bitcoin (and other virtual currencies) as "a kind of electronic money." (*Id.* at Tab 2.) The Treasury Department, the SEC, and the CFPB's position reflect the reality that bitcoin can and is spent and used like any other currency. Indeed, over 100,000 merchants accept bitcoin for payment, including Expedia and Overstock.com, and the list keeps growing. (*See* www.spendbitcoins.com.) (*Id.* at Tab 6.)

Tellingly, the Trustee fails to discuss any of that. Instead, the Trustee relies on misplaced interpretations of IRS guidance and a CFTC settlement agreement.

With regard to the IRS guidance concerning bitcoin, which was issued in March 2014, it discusses how to treat the appreciation of the value of bitcoin for tax purposes (namely, as property). The Trustee concedes as much, admitting that the purpose of the IRS ruling was only to define bitcoin so that upon a sale, if the market value appreciated, such sale would be subject to taxation. (Mot. at 5:14-16.) But this does nothing to further the Trustee's position because, as the IRS has acknowledged, taxing bitcoin as property is how the IRS treats all forms of currency other than USD. (Compendium at Tab 7.) This has been noted in case law on the subject as well (which the Trustee again fails to address). *See, e.g., Philip Morris Inc. v. C.I.R.*, 71 F.3d 1040, 1042 (2d Cir. 1995) ("In the hands of a U.S. taxpayer, foreign currency is considered property.") (*Id.* at Tab 7, pg. 2.) In other words, the IRS treats the taxation of bitcoin the same way it treats the taxation of all currencies other than USD. In addition, the IRS guidance explicitly references the FinCEN guidance, which the Trustee ignores. All of this does not lead to the conclusion that bitcoin should be treated as property in a non-tax setting, despite the Trustee's claim to the contrary. Rather, it leads to the conclusion that bitcoin is currency.

The Trustee's reliance on CFTC precedent is equally misplaced. The CFTC order on which the Trustee relies concerns its regulation of a bitcoin options and future market. (*See*, the Trustee's Request for Judicial Notice at Exhibit C). The CFTC regulates bitcoin as a commodity because the

- 6 -

Commodity Exchange Acts define commodity as not only things like gold, wheat, soy etc. but also "all services, rights, and interests (except motion picture box office receipts, or any index, measure, value or data related to such receipts) in which contracts for future delivery are presently or in the future dealt in." 7 U.S. Code § 1(a)(9). As CFTC's own website makes clear "The CFTC is the federal agency with the primary responsibility for overseeing the commodities markets, including foreign currency trading." (Emphasis added)(Compendium at Tab 3, pg. 1.)

Essentially, the definition of commodity is so broad, that it gives the CFTC the power to regulate essentially all futures markets (save for a few statutory exceptions), even if one is not speculating on a traditionally defined commodity. In fact, the CFTC has specifically been delegated the authority to regulate off exchange currency options markets for foreign currencies. (*Id.*) Thus, it is entirely unsurprising that the CFTC would also regulate a bitcoin options and future market because it regulates all sorts of foreign currency options markets under the broad definition of commodity.

Like the IRS guidance, the CFTC order is regulating bitcoin in essentially the same manner as it regulates other forms of currency. The CFTC merely defined bitcoin as property or a commodity for the purposes of regulating it, while at the same time essentially acknowledging that it is a currency. Accordingly, the Trustee's argument with regard to the CFTC is nothing more than semantics, asking the Court to adopt a form over substance interpretation.

Overall, how federal agencies and merchants (including the Debtor herein) treat bitcoins strongly reinforces the point that bitcoin should be treated as a currency here, and not a commodity.

### 2. Relevant case law treats bitcoin as a currency not a commodity.

There are only a handful of court decisions on whether bitcoin should be treated as a currency or something else, but all of them have treated bitcoin as a currency. As the Trustee effectively concedes, not a single federal case has ever ruled or stated that bitcoin should be treated as a commodity.

For example, bitcoin has been held to be a currency for the purpose of money laundering statutes. *See, e.g., U.S. v. Ulbricht*, 31 F.Supp.3d 540 (S.D.N.Y. 2014). In *Ulbricht*, the defendant was the founder of a website that facilitated the sale of various sorts of illicit goods and services

through the use of bitcoin. *Id.* at 547. The defendant there was charged with, amongst other things, money laundering. *Id.* He argued that he could not be charged with money laundering because bitcoin is not currency. *Id.* at 569. In doing so, the defendant relied upon the very same IRS interpretation that forms the main basis for the Trustee's Motion. *Id.* The district court there rejected that argument finding that "the only value for bitcoin lies in its ability to pay for things...it cannot be put on a shelf and looked at or collected in a nice display case." *Id.* at 570. Accordingly, the district court found that Bitcoin was a monetary instrument because "[a]ny other reading would –in light of Bitcoins' sole raison d'etre- be nonsensical." *Id.*

A similar conclusion was reached in another Southern District of New York criminal case involving a charge of unlicensed money transmission in violation of 18 U.S.C. § 1960. *U.S. v. Faiella*, 39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) ([Defendant] clearly qualifies as a "money transmitter"...[FinCEN] has issued guidance specifically clarifying that virtual currency exchangers constitute "money transmitters" under its regulations); *see also U.S. v. Budovsky*, 2015 WL 5602853 at *10 (S.D.N.Y. 2015) (Under Treasury Department regulations, the Treasury Department "does not differentiate between real currencies and convertible virtual currencies."). And again, in the SEC enforcement action against the Ponzi schemer referenced above, bitcoin was also found to be a currency. *Shavers*, 2014 WL 4652121 at * 1 ("bitcoin is a decentralized digital currency that may be used to purchase goods and services online, or traded on online exchanges for conventional currencies, including the U.S. Dollar"); *see also U.S. v. Brown*, 68 F.Supp.3d 783, fn. 2 (2014) ("Bitcoin is the name of an encrypted online currency.").

The Trustee claims that the cases having dealt with the issue so far concerned money laundering charges and that therefore they, of course, defined money as broadly as possible, so these cases should be ignored. (Mot. at 7:9-13.) The Trustee is wrong. Although the Trustee would make it seem otherwise, the courts that made these rulings engaged in thorough and independent analysis before reaching their decisions. They weighed arguments on both sides and nowhere in their opinions do they state they were defining it as broadly as possible so the law would encapsulate bitcoin. The courts' decisions were not foregone conclusions as the Trustee would have

- 8 -

the Court believe. It is also worth noting that the SEC's civil case, *Shavers*, did not involve a criminal money laundering charge.

Moreover, the Trustee apparently misses the irony of his own position in relying on cherry-picked and misleading interpretations of certain federal agencies' views (in this case, the IRS and CFTC). The Trustee's Motion rests on certain agencies alleged interpretations of bitcoin, where those agencies are given the authority to define bitcoin as broadly as possible so as to give them (the agencies) maximum authority. Applying the Trustee's logic to those agencies decisions renders them meaningless too. In any event, as described above both the IRS and CFTC merely treat bitcoin like other foreign currencies. This only supports Dr. Lowe's position here and undercuts the Trustee's.

**B.     The Trustee's and HashFast's Actions Support Treating Bitcoin as a Currency**

The Trustee's entire argument is premised on the idea that the relief sought by the Motion is consistent with the "purpose of restoring the estate to the financial condition it would have enjoyed had the transfers not occurred." (Mot. at 2:22-24.) And that to deny the Motion would have the effect of "deny[ing] creditors of the estate a million dollars in post-transfer appreciation." (*Id.* at 2:23-25.) But the Trustee has not taken the position that creditors who paid in bitcoin are entitled to their "property" back. Quite the opposite, the Trustee has always made clear that creditors would only get the cash value of their investment/deposit at the time it was made, even if they paid in bitcoin.[3] This fact alone should cause the Court to rule in Dr. Lowe's favor.

How HashFast treated bitcoin before the bankruptcy filing only reinforces the point. The price of the BabyJets, if one went to order it on HashFast's website, was denominated in USD, with only an option for payment in bitcoin (although, as set forth above, it appears that certain parties were allowed to pay with fiat money). (Lowe Decl. at ¶ 15.) And to the extent that HashFast

---

[3] *See, Liquidating Trustee's Third Omnibus Objection to Claims (Disallowance in Whole or in Part of Claims Seeking Repayment of Bitcoin or Bitcoin Equivalent Value)* (Docket No. 405), in which the Trustee objects to claims as follows: "by and through the claim, the Claimant seeks a refund of sums paid in exchange for Bitcoin mining computers the debtors purportedly failed to deliver. The Claimant, however, has failed to establish a legal or contractual right to either (a) a refund of Bitcoin equivalent to the initial payment based on the exchange note at the time of payment or (b) an amount in USD equal value of Bitcoin as of the order for relief."

received bitcoin, they were apparently liquidated quickly in order to provide cash for payments to third parties who did not accept bitcoin. (*Id.* at ¶ 16.) Moreover, throughout the bankruptcy case, the Debtor treated bitcoin as currency. *See, Consolidated Plan of Liquidation and Disclosure Statement Dated June 4, 2015* (the "Disclosure Statement")[Docket No. 379] in which "***Cash***" is defined to "mean cash or cash equivalents, including but not limited to, checks, bank deposits, ***Bitcoin***, or other similar items." (Emphasis added). The Disclosure Statement at page 61 goes on to say "[a]ny payment of Cash made under this Plan may be made either by check drawn on an account of the Hashfast Creditor Trust, by wire transfer, by automated clearing house transfer from a domestic bank, or transfer of Bitcoin from a Bitcoin wallet belonging to the Hashfast Creditor Trust, at the option of the Hashfast Creditor Trust." (Emphasis added). These statements and representations constitute judicial admissions, and the Trustee is judicially estopped from taking a contrary position now. The Trustee/the Estate cannot have it both ways. In sum, there is no evidence that anyone at HashFast, prior to or after the bankruptcy, ever treated bitcoin as a commodity or property that would be held for potential capital appreciation in the context of the type of payment Dr. Lowe received.

The Debtor's Schedule B [Docket No. 84] reflects that on the petition date, the Debtor had 5.1680623 bitcoins on hand and cash on hand and cash in the bank of only $76,541.01. In other words, the Debtor was tapped out and would not have had the bitcoin it paid Dr. Lowe even had it not made the contractual payments to Dr. Lowe required by the MOU. It is obvious that HashFast did not hold bitcoin for long term appreciation, it used what it had as currency, and its value was the monetary value at the time of transfer.

### C. Even if the Court finds that Bitcoin is a Commodity, the Court Should Only Put the Estate in a Pre-Transfer Position

Even if the Court finds that bitcoin is a commodity here, the same analysis above would weigh in favor of finding that the value of the property at the time of transfer is the correct valuation. Contrary to the Trustee's assertions, the Court need not and should not automatically take the highest valuation. Instead, a bankruptcy court ordinarily determines the value of the property to be the value at the time of the transfer, but has discretion on how to value the property

Case: 15-03011    Doc# 44    Filed: 02/05/16    Entered: 02/05/16 17:00:09    Page 14 of 20
- 10 -

so as to put the estate in its pretransfer position. *See, e.g., In re Taylor*, 599 F.3d 880, 890 *quoting* (9th Cir. 2010); *Joseph v. Madray (In re Brun )*, 360 B.R. 669, 674 (Bankr.C.D.Cal.2007) ("[t]ypically, courts equate 'value' with the fair market value of the subject property at the time of the transfer."); *In re McLaughlin*, 183 B.R. 171, 177 (Bankr. W.D. Wis. 1995) (the market price at the time of transfer is the proper measure of § 550); *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1267 (10th Cir. 2004)("[w]e believe the only generally applicable rule in regard to §550(a) valuation is that 'the time at which the value is measured depends upon the circumstances of each individual case.' *Pritchard v. Brown (In re Brown)*, 118 B.R. 57, 60 (Bankr. N.D.Tex. 1990) (quoting *In re Blackburn*, 90 B.R. at 573 (citing 4 Collier on Bankruptcy ¶ 550.02 n. 6 (15th ed.1987)"); *In re James B. Downing & Co.*, 74 B.R. 906, 911 (Bankr. N.D.Ill. 1997) ("[i]t is generally agreed that '[t]he market price at the time of transfer is the proper measure of damages . . ."); *In re First Software Corp.*, 107 B.R. 417, 423 (D. Mass. 1989) ("[i]t is simply within the court's discretion to determine whether a return of the value of the property or return of the actual property is the appropriate remedy"); *In re Aero-Fastener*, 177 B.R. 120, 139 (Bankr. D.Mass. 1994)("[t]he factors which the Court should consider in determining whether to order turnover of the property rather than payment of the value include whether the value of the property (1) is contested [in this case the value of the bitcoin is not contested]; (2) is not readily determinable [in this case the value of the bitcoin is readily determinable at all times]; or (3) is not diminished by conversion or depreciation [in this case the value of the bitcoin is not diminished by conversion or depreciation]").

In essence, the focus of the Court's inquiry should be on putting the estate back to where it would have been had the transfer(s) not been made, not giving the estate an undeserved windfall. *See In re Heller Ehrman LLP*, 2014 WL 323068, at *8 (Bankr. N.D. Cal. Jan. 28, 2014) ("[a] limitation of recovery to the amounts and profit margins that…would have received had it completed the work complies with the Ninth Circuit's oft-repeated principle that that damages under section 550 should "restore[s] the estate to the financial condition it would have enjoyed if the transfer had not occurred.") In fact, in its Motion for Issuance of Right to Attach Order and Writ of Attachment (the "Motion to Attach") at page 8 [Adv. Docket No. 5], the Debtor expressly

acknowledged that "[t]he determination of reasonable equivalence must be made at the time of the transfer," citing *In re Brobeck, Phleger & Harrison, LLP*, 408 B.R. 340, 342 (Bankr. N.D. Cal. 2009), citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 (1994); *see also In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 578 (Bankr. N.D.Cal. 1994) ("all assets involved in the contested transfer should be measured at their market value at the time of transfer."); *In re Ozark Restaurant Equipment Co., Inc.*, 850 F.2d 342, 344-45 (8th Cir. 1988). Neither appreciation nor depreciation in the value of the assets after the transfer affects the calculation of consideration. *In re Newman*, 15 B.R. 658, 660 (S.D.N.Y. 1981); 4 *Collier* ¶ 548.09 at 548-116."); *see also* Cal. Civil Code §3439.08 and 11 U.S.C. §548(c). Again, the Debtor is judicially estopped from taking a contrary position now. On that basis alone, the Motion should be denied.

Moreover, HashFast paid a very specific defined USD commission for Dr. Lowe's services, although he happened to have accepted another currency equivalent, in this case in bitcoin. If the services are held to be not up to standard (not that they should be), he should not have to give up many times what he negotiated for and was paid. By all accounts HashFast treated bitcoin as cash and liquidated them quickly. It is extremely unlikely given the facts of this case that HashFast would have ever held the value of 3,000 bitcoins long enough for them to appreciate. Even assuming HashFast wins its ultimate case (which it will not), putting it back to where it would have been would involve paying the dollar value for services rendered, not the windfall sought here.

Additionally, it is beyond dispute that the Trustee would not be arguing that bitcoin is a commodity or property if bitcoin had depreciated against USD after the payment to Dr. Lowe. This Motion certainly would not have been made had bitcoin depreciated against USD. If bitcoin were to tank massively tomorrow, the Trustee's position would change overnight. The Trustee's motion impermissibly rests on a "heads I win tails you lose" theory of recovery and is entirely inconsistent with the principles of basic fairness that underlie the bankruptcy code and fraudulent transfer statutes. In short, the facts, applicable law and basic fairness make this issue uniquely unsuited to a summary judgment ruling as sought by the Trustee here.

### D. Satisfaction of an Antecedent Debt is Not a Fraudulent Transfer

As further conceded in the prior Motion to Attach at page 8 [Adv. Docket No. 5], "[u]nder California law, the satisfaction of an antecedent debt constitutes 'value.'" Cal. Civ. Code § 3439.03. In the instant case, the transfer(s) at issue were paid to satisfy the amount owing under the MOU (an antecedent debt). Thus, the Debtors received 'value' for the MOU Payment." (*See* Mot. to Attach at 8:8-11 [Adv. Docket No. 5].) From this principle, it is generally held and understood that payments on account of antecedent debts are not fraudulent transfers under both state and federal law.[4] "Payment on an antecedent debt is ordinarily not recoverable as a fraudulent transfer, the debt being deemed valid consideration for such payment. 11 U.S.C. § 548(d)(2)(A)." *In re United Energy Corporation*, 102 B.R. 757, 763 (BAP 9th Cir. 1989); *see also Mayors v. Commissioner of Internal Revenue*, 785 F.2d 757, 761 (9th Cir. 1986) (quoting *Bank of California v. Virtue & Scheck, Inc.*, 190 Cal.Rptr. 54, 65 (1983) (applying California law) ("[t]he essential issue before the jury was whether the entire transaction was enacted in good faith. If the parties in good faith believed that the promise was binding, then the consideration was good")); *Atlanta Shipping Corporation, Inc. v. Chemical Bank*, 818 F.2d 240, 249-50 (2d Cir. 1987) ("[f]air consideration is given for an obligation '[w]hen in exchange for such . . . obligation, as a fair equivalent therefor, and in good faith . . . an antecedent debt is satisfied . . . . ' In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director or major shareholder of the transferor."). Thus, the MOU payment itself cannot be a fraudulent transfer (and the Trustee's Amended Complaint does not seek avoidance of the obligation), and therefore, the Motion must be denied.

---

[4] Moreover, 11 U.S.C. § 548(d)(2)(A) specifically provides that "value" means the satisfaction or a present or antecedent debt.

## CONCLUSION

For the forgoing reasons, and based upon the great weight of applicable law and the facts, circumstances and equities of this case, the Trustee's Motion should be denied, and the Court should find that bitcoin is currency for all purposes when determining value in this case, and should determine such value as of the date of the transfer(s) (*i.e.*, that the value Dr. Lowe received from HashFast was approximately $300,000).

Dated: February 5, 2016

Respectfully submitted,

BAKER MARQUART LLP
BRIAN E. KLEIN

- and -

JEFFER MANGELS BUTLER & MITCHELL LLP
DAVID M. POITRAS, APC

By: /s/ David M. Poitras
    DAVID M. POITRAS
    Attorneys for Defendant
    Dr. Marc A. Lowe

- 14 -

# PROOF OF SERVICE

## STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On February 5, 2016 I served the document(s) described as **DEFENDANT DR. MARC A. LOWE'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**, in this action addressed as follows:

### SEE ATTACHED LIST

☒ (BY MAIL) True and correct copies of the aforementioned document(s) were deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)) Pursuant to the controlling Rules, the aforementioned document(s) will be served by the court via NEF and proper link(s) to the document(s). On February 5, 2016, I checked the appropriate CM/ECF docket for this case or proceeding and determined that the aforementioned person(s) has/have consented to receive NEF transmission at the aforementioned electronic addresses.

☐ (BY FAX) The parties have consented in writing to receive service by facsimile transmission. On _____, I transmitted the above-described document(s) by facsimile machine to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

☐ (BY ELECTRONIC SERVICE) On _____, I transmitted the aforementioned document(s) as PDF attachments to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is bt@jmbm.com, and was reported as complete and without error.

☐ (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a sealed envelope and I delivered such envelope by hand to the offices of the addressee.

☐ (BY OVERNIGHT DELIVERY) I placed the aforementioned document(s) in a sealed envelope with postage thereon fully prepaid and I caused said envelope to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

Executed on February 5, 2016 at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: February 5, 2016

*/s/ Billie Terry*

## *ADDITIONAL SERVICE INFORMATION*

(TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

- Geoffrey A. Heaton    gheaton@duanemorris.com
- Ashley McDow    amcdow@bakerlaw.com, SGaeta@bakerlaw.com
- Aron M. Oliner    roliner@duanemorris.com
- David M. Poitras    dpoitras@jmbm.com

(BY MAIL)

United States Trustee, Region 17
United States Department of Justice
235 Pine Street, Suite 700
San Francisco, CA 94104-2736