BRIAN E. KLEIN (SBN 258246)
BAKER MARQUART LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
Email:      bklein@bakermarquart.com

DAVID M. POITRAS, APC (SBN 141309)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
Email:      dpoitras@jmbm.com

Attorneys for Defendant Dr. Marc A. Lowe

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 14-30725 |
| HASHFAST TECHNOLOGIES LLC, a California limited liability company, | (Substantively Consolidated with In re HashFast LLC, Case No. 14-30866) |
| Debtor. | Chapter 11 |
| | Adversary Case No. 15-03011 |
| MICHAEL G. KASOLAS, LIQUIDATING TRUSTEE, | **DECLARATION OF DEFENDANT DR. MARC A. LOWE IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, vs. | |
| MARC A. LOWE, an individual, aka Cypherdoc and/or Cipherdoc, | Hearing:<br>Date:   February 19, 2016<br>Time:   10:00 a.m.<br>Place:  450 Golden Gate Avenue, 16th Floor<br>        Courtroom 17<br>        San Francisco, CA 94102 |
| Defendant. | |

I, Dr. Marc A. Lowe, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and if called to testify, could and would testify competently and accurately thereto. I am over 18 years of age.

2. I first heard of and became interested in bitcoin in January 2011.

3. In 2011, I learned of the website Bitcointalk. Initially, I was a casual reader of the forum and did not post.

4. In April 2011, I registered as a user, securing the user name of "Cypherdoc", and began posting on the forum.

5. In August 2011, I started the "Gold" thread, which has almost 1.5 million views and which averaged 4,000 views a day. I know this because I frequently check the website which provides viewership figures.

6. During the time period I was dealing with HashFast, I was the number three poster, overall in terms of frequency, on Bitcointalk. I recall this from viewing posting numbers on Bitcointalk.

7. The gold thread has since been moved to a new forum, bitco.in/forum, and currently has approximately 200,000 views and 2000-3000 views per day.

8. As I became more and more interested in bitcoin, I got involved in mining bitcoins. In 2011, I mined my first bitcoins using custom GPU miners. By 2013, to successfully mine, I determined I needed more powerful hardware, and began looking to purchase bitcoin mining hardware that various companies were beginning to manufacturer.

9. On July 24, 2013, I became aware of HashFast through HashFast's public announcement on Bitcointalk in the hardware forum. In that post, HashFast announced that it was a new business located in San Jose and that it had the premier hardware processing capability necessary to enable miners to work at the highest level. The post further invited any interested parties to visit the HashFast facility and evaluate HashFast's business.

10. On July 28, 2013, I responded to HashFast's thread on Bitcointalk, and let them know I would be in town the next day and wanted a tour. A HashFast representative set up a tour.

1     On July 29, I traveled to HashFast's San Jose facility. While there, I met Chief Executive Officer Eduardo de Castro ("de Castro") and Chief Technology Officer Simon Barber ("Barber").

11.     I placed an order for approximately $36,000 worth of HashFast's BabyJet bitcoin mining hardware that were then due for release in October 2013. I placed this order based on my tour of the facilities, Barber's and de Castro's detailed representations concerning the performance of the system, and the opportunity to be amongst the first purchasers.

12.     While there, Barber and de Castro mentioned that they would like for me to help in HashFast's launch of the BabyJet. Specifically, they mentioned that they needed advertising and endorsements help from prominent members of the bitcoin community, and that I was such a member.

13.     Following the July 29 meeting at HashFast's facility, I and HashFast representatives discussed how I might help with the launch of the BabyJet. Ultimately, an arms-length agreement was reached whereby I would endorse the BabyJet in the bitcoin community in exchange for a percentage of sales.

14.     The Memorandum of Understanding (the "MOU") was signed on or around August 7, 2013, and in it I agreed to endorse the BabyJet in return for payment of 10% of the proceeds of the first 550 BabyJets sold.

15.     At all times relevant hereto, the sales price for the BabyJets at issue was denominated by the Debtor in USD, although customers could only purchase BabyJets on the HashFast website with bitcoin; notwithstanding, the Debtor advised me that it allowed some orders to be paid in Fiat currency.

16.     By all indications, HashFast did not maintain bitcoins as any type of investment. HashFast used bitcoins as currency, and liquidated bitcoins on a regular basis to obtain cash to pay third parties who did not accept bitcoin.

17.     On August 8, 2013, I started a new thread dedicated to the BabyJet in Bitcointalk's hardware forum, in which, among things, I posted detailed endorsements of the BabyJet and disclosed that I would be paid for this endorsement. This thread represented the official opening of

HashFast's sales of the BabyJet and I coordinated the announcement with HashFast for that purpose.

18. Threads on Bitcointalk only stay at the top of the front page of the hardware forum to the extent they are posted on. In essence, continued posting to a given thread keeps it on the first page for high visibility.

19. Thus, my postings on the BabyJet were used to drive traffic and interest in order to keep the thread front and center. I posted hundreds of times in the forum, spread out across at least five separate threads, and of course even so-called "unrelated" threads, like my hugely popular gold thread, contributed to driving traffic and keeping the HashFast thread front and center before its target audience.

20. Based on my discussions with HashFast representatives, I understand that posts on Bitcointalk represented almost the totality of HashFast's marketing strategy.

21. In addition to my postings on Bitcointalk, I informed several subscribers to my newsletter, "Financial Risk Analytics" about HashFast, a number of whom decided to buy the BabyJet on that basis.

22. I also fielded personal messages from several users on Bitcointalk, a number of whom I understand decided to purchase one or more BabyJets for that reason.

23. Throughout this time period, I was advising HashFast on its marketing interactions with the forum. HashFast repeatedly acknowledged the value of my endorsement. By way of example, HashFast wanted me to join its "Board of Advisors" after the completion of the sales of the first batch of BabyJets, which occurred on August 25, although I did not join any board of advisors.

24. I was informed by HashFast that the initial run of 550 BabyJets sold out in 17 days (from August 8–25), and I received payment for my services per the terms of the MOU, spread out during September 2013.

25. As agreed by the parties in the MOU, I was paid for my services in bitcoin.

26. During this time period, one bitcoin was worth approximately $100, and thus I received approximately $300,000 in bitcoins. This was approximately a 10% commission on total

Case: 15-03011    Doc# 46    Filed: 02/05/16    Entered: 02/05/16 17:16:54    Page 4 of 7
- 4 -

sales completed (actually less based upon the amount of bitcoins I actually received vs. what I was owed), not a flat fixed payout unrelated to performance or estimated sales.

27. The sale of the initial batch of 550 BabyJets had brought in over $3.0 million in revenue (550 x $5,600 = $3.08 million). I was informed by HashFast representatives that future BabyJet sales brought in an additional $15 million.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 5, 2016, in Santa Barbara, California.

_____
Dr. Marc A. Lowe

## PROOF OF SERVICE

### STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On February 5, 2016 I served the document(s) described as **DECLARATION OF DEFENDANT DR. MARC A. LOWE'S IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**, in this action addressed as follows:

### SEE ATTACHED LIST

☒ (BY MAIL) True and correct copies of the aforementioned document(s) were deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)) Pursuant to the controlling Rules, the aforementioned document(s) will be served by the court via NEF and proper link(s) to the document(s). On February 5, 2016, I checked the appropriate CM/ECF docket for this case or proceeding and determined that the aforementioned person(s) has/have consented to receive NEF transmission at the aforementioned electronic addresses.

☐ (BY FAX) The parties have consented in writing to receive service by facsimile transmission. On _____, I transmitted the above-described document(s) by facsimile machine to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

☐ (BY ELECTRONIC SERVICE) On _____, I transmitted the aforementioned document(s) as PDF attachments to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is bt@jmbm.com, and was reported as complete and without error.

☐ (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a sealed envelope and I delivered such envelope by hand to the offices of the addressee.

☐ (BY OVERNIGHT DELIVERY) I placed the aforementioned document(s) in a sealed envelope with postage thereon fully prepaid and I caused said envelope to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

Executed on February 5, 2016 at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: February 5, 2016

Billie Terry

*ADDITIONAL SERVICE INFORMATION*

(TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING

- Geoffrey A. Heaton    gheaton@duanemorris.com
- Ashley McDow    amcdow@bakerlaw.com, SGaeta@bakerlaw.com
- Aron M. Oliner    roliner@duanemorris.com
- David M. Poitras    dpoitras@jmbm.com

(BY MAIL)

United States Trustee, Region 17
United States Department of Justice
235 Pine Street, Suite 700
San Francisco, CA 94104-2736