Aron M. Oliner (SBN: 152373)
Geoffrey A. Heaton (SBN: 206990)
**DUANE MORRIS LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, California 94105-1127
Telephone: (415) 957-3000
Facsimile: (415) 957-3001
Email: gheaton@duanemorris.com

Attorneys for Liquidating Trustee
MICHAEL G. KASOLAS

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>HASHFAST TECHNOLOGIES LLC, a California limited liability company,<br><br>Debtor. | Case No. 14-30725 DM<br><br>Chapter 11<br><br>(Substantively Consolidated with In re HashFast LLC, Case No. 14-30866) |
| MICHAEL G. KASOLAS, Liquidating Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MARC A. LOWE, an individual, aka Cypherdoc and/or Cipherdoc,<br><br>Defendant. | Adversary Proceeding No. 15-03011 DM<br><br>**REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 19, 2016<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Avenue, 16th Floor<br>Courtroom 17<br>San Francisco, CA 94102 |

Liquidating Trustee Michael G. Kasolas ("Trustee"), plaintiff in the captioned adversary proceeding, respectfully submits this Reply to defendant Marc A. Lowe's ("Defendant") opposition ("Opposition") to the Trustee's Motion for Partial Summary Judgment ("Motion").

///

///

## I. INTRODUCTION

The Opposition sidesteps the crux of the Motion: under established case law in this Circuit, <u>including a decision of this Court</u>, the estate can recover the 3,000 bitcoin that were transferred to Defendant or the value of those bitcoin at the transfer date or time of recovery, whichever is greater. This is true <u>regardless of whether bitcoin is currency</u>. Because the case law on this point is dispositive, Defendant attempts to avoid it through an assortment of spurious arguments.

First, Defendant contends that the Trustee is judicially estopped from recovering the bitcoin or their appreciated value, but then fails to explain how judicial estoppel applies, much less cite a single case in support of his theory. Second, Defendant claims, again without authority, that recovery of the bitcoin or their value at the time of recovery would constitute an "undeserved windfall" notwithstanding that this relief is the approved manner of recovery in this Circuit and entirely consistent with a trustee's duties under the Bankruptcy Code. Third, Defendant points to cases addressing "reasonably equivalent value" under section 548, conflating the standards for avoidance of a transfer with those for recovery of a transfer once avoided. Finally, Defendant inappropriately raises purported defenses to avoidance of the transfers under section 548 when the Motion makes clear that it is addressed only to the available forms of recovery under section 550.

As the Ninth Circuit confirmed in <u>In re Taylor</u>, the purpose of section 550 is to restore the estate to the financial condition it would have enjoyed if an avoided transfer had not occurred. 599 F.3d 880, 890 (9th Cir. 2010). To that end, Judge Ryan confirmed in <u>In re Brun</u> that a trustee is entitled "to recover the greater of the value of the transferred property at the transfer date or the value at the time of recovery." 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007). This Court likewise has confirmed that "courts can award the value of the [transferred] property measured at

the time of recovery where the property naturally increases in value." In re Heller Ehrman, 2014 Bankr. LEXIS 382, *25-26 (Bankr. N.D. Cal., Jan. 29, 2014).

For all of these reasons, in the event the Trustee succeeds in avoiding the bitcoin transfers, he is entitled to recover the bitcoin or their value at the time of transfer or recovery, whichever is greater. This is true regardless of whether the Court determines that bitcoin is currency, a commodity, or something in between.

## II. DISCUSSION

### A. Regardless of Whether Bitcoin Is Currency, the Trustee is Entitled to Recover the 3,000 Bitcoin or Their Value at the Time of Transfer or Recovery, Whichever is Greater.

Defendant, unsurprisingly, contends that bitcoin is currency, and wants the Court to disregard IRS and CFTC pronouncements cited in the Motion finding that bitcoin is not currency. Instead, Defendant says the Court should follow a "federal guidance" by the Treasury Department's Financial Crimes Enforcement Network and a handful of criminal money laundering cases involving bitcoin. Obviously, none of these authorities is controlling, and the Court may choose to disregard any or all of them.

That said, the Trustee submits that the IRS and CFTC rulings are much more relevant because they arise from civil proceedings seeking to determine the nature of bitcoin, as opposed to criminal proceedings where the obvious intent is to call anything "currency" that can fund a criminal enterprise. As Defendant concedes, "the IRS treats all forms of currency other than [dollars]" as property, and taxes gains on non-dollar currency accordingly. Opposition at p. 6. Defendant also concedes that the CFTC regulates foreign currency as a commodity. Opposition at p. 7. Thus, to the extent bitcoin is currency, it is a non-dollar currency that can rise and fall in value based upon supply and demand. That is to say, bitcoin has the attributes of property or a commodity and should be treated accordingly.

Moreover, there are fundamental differences between bitcoin and "real" or fiat currency. Fiat currency can be created e*x nihilo* and is theoretically limitless in supply. The supply of bitcoin, in contrast, is finite. Bitcoin must be created or "mined" through computers solving complex mathematical equations. Currently, there are approximately 15.2 million bitcoin in circulation, while the total amount of bitcoin cannot exceed 21 million.[1][2] In addition, since bitcoin users can hold multiple bitcoin "addresses" that are not linked to personally identifying information,[3] bitcoin have been used in connection with illegal activities[4] – hence, the government's desire to call bitcoin currency for purposes of money laundering statutes.

Given bitcoin's scarcity and anonymous usage capabilities, to say nothing of its "cool factor," bitcoin's price has increased significantly relative to the dollar and other fiat currencies. There can be no doubt that Defendant, a bitcoin expert who goes by the moniker "Cypherdoc," was well aware of bitcoin's potential to appreciate in value when negotiating payment terms with the Debtor. Thus, to the extent bitcoin can be characterized as a currency, it is a currency manifestly different from ordinary currency; it is a unique form of property – as much investment vehicle as medium of exchange – and should be treated as such when determining the Trustee's recovery rights under section 550.

Ultimately, however, the answer to the "currency or not" question should not affect the form of recovery. As discussed in the Motion, even if the Court determines that bitcoin is currency, the Court should still award the property (i.e., bitcoin) transferred or the value of that property measured at the time of transfer or recovery, whichever is greater. This outcome is consistent with the holdings of Taylor and Brun, as well as the Court's own Heller Ehrman

---

[1] See https://www.quora.com/How-many-Bitcoins-are-currently-in-circulation

[2] See http://www.coindesk.com/information/what-is-bitcoin/

[3] Id.

[4] See http://money.cnn.com/infographic/technology/what-is-bitcoin/

Case: 15-03011   Doc# 47   Filed: 02/12/16   Entered: 02/12/16 08:43:13   Page 4 of 9

decision.  Only this relief will place the estate in the same position it would have enjoyed had the transfers not occurred.

### B. There Is No Basis to Judicially Estop the Trustee from Recovering the Bitcoin or Their Appreciated Value.

Defendant contends that the Trustee should be judicially estopped from recovering the bitcoin or their appreciated value, citing to supposedly inconsistent positions taken by the Trustee and Debtor.  Notably, Defendant posits that judicial estoppel applies without actually addressing the legal requirements for judicial estoppel.

As the Ninth Circuit has explained, three factors are considered in determining whether to apply the doctrine of judicial estoppel:  (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party achieved success in the prior proceeding; and (3) whether the party asserting the inconsistent position would achieve an unfair advantage if not estopped.  United Steel Workers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc., 512 F.3d 555, 563 (9th Cir. 2008) (citations omitted).  Here, in each instance where Defendant contends that judicial estoppel should apply, he fails to show that any of these requirements have been satisfied.

For instance, Defendant argues, "the Trustee has always made clear that creditors would only get the cash value of their investment/deposit at the time it was made, even if they paid in bitcoin."  Opposition at p. 9.  In support of this statement, Defendant quotes from a Third Omnibus Claim Objection [Docket No. 405] as follows:

> By and through the claim, the Claimant seeks a refund of sums paid in exchange for Bitcoin mining computers the debtors purportedly failed to deliver.  The Claimant, however, has failed to establish a legal or contractual right to either (a) a refund of Bitcoin equivalent to the initial payment based on the exchange note at the time of payment or (b) an amount in USD equal value of Bitcoin as of the order for relief.

Opposition at p. 9, n. 3.

Case: 15-03011    Doc# 47    Filed: 02/12/18    Entered: 02/12/16 08:43:13    Page 5 of 9

The quoted language meets none of the three requirements for judicial estoppel. First, it is not "clearly inconsistent" with the Trustee's position in the Motion, as the quoted language says absolutely nothing about a trustee's recovery powers under section 550. Rather, the claim objection addresses the claimant's inability to establish the validity and amount of its claim under applicable non-bankruptcy law. Second, there is no evidence that the Trustee "prevailed" on the claim objection. Indeed, at this writing there has been no ruling on the objection one way or the other. Finally, there is no reason why the Trustee would achieve an "unfair advantage" if not estopped since there is no apparent reason why objecting to a creditor's claim provides any kind of advantage in the Adversary Proceeding.

Defendant's other judicial estoppel theories are similarly baseless. For instance, Defendant contends that the Debtor, prior to filing for bankruptcy, sold BabyJets "denominated in USD, with only an option for payment in bitcoin (although, as set forth above, it appears that certain parties were allowed to pay with fiat money)." Opposition at p. 9. Defendant also avers, "throughout the bankruptcy case, the Debtor treated bitcoin as currency[,]" citing to provisions in the Debtor's disclosure statement providing that payments under its chapter 11 plan can be paid through transfer of bitcoin. Opposition at p. 10.

How do the Debtor's pre-bankruptcy business operations constitute a position that is "clearly inconsistent" with the Trustee's recovery rights under section 550? The Trustee does not dispute that bitcoin is an accepted medium of exchange in certain circles, including those companies involved in bitcoin mining. And, as explained, even if bitcoin is deemed currency, the Trustee is still entitled to recover the bitcoin or their value at the time of recovery.

Likewise, nothing in the Debtor's chapter 11 plan ("Plan") provides that the Trustee's recovery rights in the Adversary Proceeding are limited to the value of the 3,000 bitcoin at the time of the transfers. To the contrary, the Plan specifically provides that the Trustee's recovery

Case: 15-03011    Doc# 47    Filed: 02/12/18    Entered: 02/12/16 08:43:13    Page 6 of 9

rights include any post-transfer increase in the value of bitcoin. To wit, the Plan states, "The potential recovery from the Lowe Adversary (i.e., 3000 BTC) *presently exceeds $700,000*, exclusive of litigation costs." See Consolidated Plan of Liquidation and Disclosure Statement dated June 4, 2015 [Docket No. 379] at p. 10 (emphasis added). Thus, the Debtor took the position in the Plan that the Trustee could recover post-transfer appreciation in the value of bitcoin, not the $363,000 value at the time of the transfers. Contrary to what Defendant contends, the Trustee's position is wholly consistent with the Plan, and there is absolutely no basis for judicial estoppel.

For all the foregoing reasons, Defendant's judicial estoppel arguments are without merit.

**C.  Recovery of the Bitcoin or Their Value at the Time of Recovery Is Not a "Windfall."**

Next, Defendant argues that allowing the Trustee to recover the bitcoin or their appreciated value would amount to an "undeserved windfall" to the estate, and would be "entirely inconsistent with the principles of basic fairness that underlie the bankruptcy code and fraudulent transfer statutes." Opposition at pp. 11, 12. Interestingly, Defendant cites to Brun in support of this proposition notwithstanding that the case holds just the opposite. See Brun, 360 B.R. at 674 (trustee is entitled "to recover the greater of the value of the transferred property at the transfer date or the value at the time of recovery."). Defendant's position is also at odds with this Court's Heller decision, supra.

In fact, Defendant's position is at odds with the Plan, to say nothing of the Bankruptcy Code itself. Under the Plan, it is the Trustee's duty to prosecute avoidance actions and maximize recoveries for the benefit of creditors. See Plan at pp. 45-46. As the Plan advises creditors, "Success of the Plan and distributions thereunder depend primarily on the success of the litigation." Plan at p. 55. The Trustee's duty under the Plan is no different from that of a chapter 7 or 11 trustee, who has a fiduciary duty to try to maximize the value of estate assets for the

benefit of creditors. Defendant's position – that the Trustee should be barred from maximizing value for creditors through a form of recovery recognized by this Court and the Ninth Circuit itself – has no legal basis.

Finally, Defendant argues that the Court should disregard the rapid appreciation in the value of bitcoin because the Debtor allegedly converted whatever bitcoin it had on hand to dollars to fund its operations as soon as the bitcoin came in, leaving it with only 5 bitcoin on the petition date. See Opposition at pp. 9-10. In other words, the Debtor, like many, many companies that file for chapter 11, burned through its liquid assets during its slide into bankruptcy.

The purpose of section 550 is to allow trustees to maximize the value of an avoided transfer for the benefit of creditors. Judge Ryan confirmed in Brun that section 550 "demonstrates the intent of Congress that any appreciation not attributable to the actions of a good faith transferee inure to the benefit of the estate." 360 B.R. at 674. Why should this principle be disregarded because the Debtor conducted its business like a typical company in financial straits? Defendant's "undeserved windfall" position is spurious and without merit.

### D. Defendant Conflates the Standard for "Reasonably Equivalent Value" under § 548 with That for Recovery of an Avoided Transfer Under § 550.

In an effort to bolster his "windfall" argument, Defendant cites to several cases, as well as the Debtor's motion for writ of attachment filed in the Adversary Proceeding, in support of the proposition that "the determination of reasonable equivalence must be made at the time of the transfer." See Opposition at p. 12. The authorities Defendant cites all address how to determine "reasonably equivalent value" when avoiding a transfer under section 548.

The Trustee does not dispute that this is the standard for determining reasonably equivalent value when avoiding a constructively fraudulent transfer. However, the standard for

DM3\3781902.1 R2495/00001       8       REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT – A.P. NO. 15-03011

Case: 15-03011    Doc# 47    Filed: 02/12/16    Entered: 02/12/16 08:43:13    Page 8 of 9

<u>recovering</u> an avoided transfer under section 550 is entirely different. This is evident from the language of the statute itself, which permits a trustee to recover the property or its value, without making any mention of "reasonably equivalent value," to say nothing of the cases cited above which expressly sanction recovery of post-transfer appreciation.

Accordingly, the cases Defendant cites are inapposite, and his argument is without merit.

### E. Defendant's Purported Defenses to Avoidance Are Not Relevant to the Motion.

Lastly, on page 13 of the Opposition, Defendant raises purported defenses to avoidance of the bitcoin transfers. However, the Motion makes clear that it is directed only to the available forms of recovery under section 550, not to avoidance of the transfers. As such, this section of the Opposition is inapposite and should be disregarded in its entirety.

## III. CONCLUSION

For all the foregoing and proper reasons, the Trustee requests that the Court grant the Motion and enter an order finding that for purposes of recovery under section 550(a) bitcoin are a commodity, not a currency, and directing that if the subject transfers are avoided the estate is entitled to either the 3,000 bitcoin or the value of the bitcoin as of the transfer date or time of recovery, whichever is greater.

Dated: February 12, 2016      **DUANE MORRIS LLP**

By: /s/ Geoffrey A. Heaton (206990)
    Geoffrey A. Heaton
    Attorneys for Plaintiff and Liquidating
    Trustee, MICHAEL G. KASOLAS